J-S02004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JENNIFER R. KONOPKI | |
| Appellant | No. 1683 EDA 2013 |

Appeal from the Judgment of Sentence April 19, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002756-2009

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY MUNDY, J.:                              **FILED MAY 21, 2015**

Appellant, Jennifer R. Konopki, appeals from the April 19, 2013 aggregate judgment of sentence of 10 to 20 years' incarceration, plus two years' probation, imposed after a jury found her guilty of aggravated assault, robbery, kidnapping, criminal conspiracy, and possession of an instrument of crime (PIC).[1]  After careful review, we affirm.

The trial court summarized the facts of this case as adduced at trial in the following manner.

> On October 24, 2008, [] Appellant, Joseph Holmes, Brandon Lee, and Naimah Fisher were in Holmes's residence at 8064 Forrest Avenue in Philadelphia.  [] Appellant told Holmes and Lee that she knew a way for them to acquire money from a man that she used to escort who had $30,000 in his

_____

[1] 18 Pa.C.S.A. §§ 2702(a), 3701(a)(1)(ii), 2901(a)(1), 903, and 907(a), respectively.

bank account. She devised a plan to tell the man that she needed him to drive her and her son back to their residence in Wilkes-Barre. [] Appellant, Holmes, and Lee then left the residence, but Fisher stayed at the house along with [] Appellant's child.

Shortly thereafter, [] Appellant called Robert Moir (the Complainant) on the phone. [] Appellant asked him to pick her up in Philadelphia and drive her and her baby home. The Complainant agreed to help, and he met [] Appellant at 10th and Filbert Streets. [] Appellant entered the Complainant's car without her child. Before entering the car, [] Appellant asked the Complainant to stop at a K-Mart department store. They stopped at K-Mart where the Complainant bought [] Appellant a car seat, diapers, and baby clothes. [] Appellant then asked the Complainant to drive her to 3846 North 8th Street to pick up her baby. When they arrived at the address at about 4:30 p.m., [] Appellant asked the Complainant to come in to meet her uncle. The Complainant complied. When the Complainant entered the house, Joseph Holmes and Brandon Lee immediately pushed him to the floor. One man pointed a gun at the Complainant. Holmes and Lee then covered the Complainant's head with a pillowcase. Holmes and Lee carried him from the first floor down to the basement by his chest, belt, and legs perpendicular to the stairs so that the Complainant was looking down at the steps.

In the basement, Holmes and Lee took off the Complainant's shirt, socks, and shoes. They tied the Complainant's legs to a chair, handcuffed, and gagged him. After the Complainant was tied up, one man hit the Complainant with a gun on the right side of his forehead, and punched him in the stomach. The punch was so hard that the chair leg broke and the Complainant fell to the floor. Holmes and Lee shouted at the Complainant and demanded his bankcard Personal Identification Number (PIN). [**] **Appellant then came down to the basement and urged the Complainant to tell Holmes and Lee his PIN or they would kill him.** As a result, the

- 2 -

Complainant gave them his PIN number. As they left the basement, one of the men told the Complainant that they would return and cut his toes off one at a time until he gave them his retirement fund. [] **Appellant, Holmes, and Lee then went upstairs and left the house while the Complainant was still gagged, bound to a chair, and lying on the floor.**

Approximately five minutes after [] Appellant, Holmes, and Lee left, a third man entered the basement and told the Complainant that he would let him go. This man removed the pillowcase from the Complainant's head, untied the ropes holding his legs, gave him back his sweatshirt, and put his shoes back on. The Complainant's handcuffs could not be removed since the man could not find the handcuff key. The man nonetheless took the Complainant upstairs to the front door and told him to leave. The Complainant walked to a nearby corner store, where a customer called the police.

At approximately 7:00 p.m., Philadelphia Police Officers Joseph Moore and Bruce Cleaver responded to the call and found the Complainant at the corner store bleeding from the head and back. The Complainant's hands were cuffed behind his back, and his wrists were bleeding. The Complainant's clothes were ripped and partially off him, his lens from his glasses was cracked, and there was dried blood on his body and clothes. The Complainant told Officer Moore that he had been kidnapped and robbed by several black males. The Complainant also gave a description of [] Appellant, a description of his car, and the address where he had been taken to. The officers put the Complainant in the back of a police SUV and drove him down the block to 3846 N. 8th Street. A few minutes later, as the officers traveled northbound on 8th Street with the Complainant, Officer Moore saw [] Appellant, Holmes, and Lee in the Complainant's car driving southbound on 8th Street. [] **Appellant was the driver**. After [] Appellant parked, the officers investigated the suspects. The Complainant

subsequently positively identified each as his assailants. Upon their arrests, officers confiscated $610 from Holmes and four $100 ATM withdrawal receipts (in the Complainant's name) from Lee. The officers also recovered a Tec-9 semi-automatic handgun loaded with 26 live rounds from the trunk of the Complainant's car. The Complainant identified the gun as the one used to beat and rob him. Later, Fire Department personnel used a bolt cutter to cut the handcuffs off the Complainant's wrists.

Trial Court Opinion, 5/2/14, at 3-6 (emphasis in original, footnotes omitted).

Appellant was arrested and charged on October 26, 2008, with criminal conspiracy, aggravated assault, robbery, kidnapping, theft by unlawful taking, theft by receiving stolen property, possession of a firearm without a license, PIC, terroristic threats, unlawful restraint, carrying a firearm on public streets in Philadelphia, simple assault, reckless endangerment of another person, false imprisonment, and unauthorized use of a motor vehicle.[2] All charges were bound over to the court of common pleas, and the Commonwealth filed an information on March 13, 2009. The matter proceeded to an initial trial date on October 20, 2009 before Judge Stephen R. Geroff, at which time one of Appellant's co-defendants requested a continuance, and the Commonwealth declined to sever Appellant's case.

Trial was subsequently continued on various dates, as discussed in more detail *infra*, by various judges before whom the case was assigned.

_____

[2] 18 Pa.C.S.A. §§ 903, 2702(a), 3701(a)(1)(i), 2901(a)(1), 3921(a), 3925(a), 6106(a)(1), 907(a), 2706(a)(1), 2902(a)(1), 6108, 2701(a), 2705, 2903(a), and 3928(a), respectively.

Meanwhile, on June 8, 2010, Appellant filed a motion to sever her case from her co-defendants and a motion *in limine*. On March 2, 2011, Appellant filed a motion to dismiss for violation of Pennsylvania Rule of Criminal Procedure 600. A hearing on Appellant's motion to dismiss was held on March 18, 2011, at the conclusion of which Judge Glenn B. Bronson denied the motion. Appellant filed a motion to suppress on April 4, 2012.

Ultimately, a new trial date was set for October 22, 2012. On that date, Appellant filed an amended motion to dismiss for violation of Rule 600. On October 22, 2012, Judge Glynnis Hill denied Appellant's outstanding motion to sever and deferred decision on Appellant's amended motion to dismiss. Thereafter jury selection commenced. On October 24, 2012 the jury was empaneled, opening arguments were delivered, and testimony commenced. Sometime thereafter, Appellant absconded, and she failed to appear for the scheduled resumption of the trial on October 31, 2012. On November 1, 2012, a bench warrant was issued for Appellant's arrest. The trial resumed *in abstentia* on November 5, 2012.[3] On November 8, 2012, the trial court denied Appellant's amended motion to dismiss. On November 9, 2012, the jury found Appellant guilty of the afore-stated charges.[4] On

_____

[3] Appellant was subsequently apprehended and following a hearing on December 3, 2012, the trial court found Appellant guilty of criminal contempt and sentenced her to two and one-half months to five months' incarceration.

[4] The remaining charges were *nolle prossed*.

April 19, 2013, Judge Hill sentenced Appellant to an aggregate term of incarceration of 10 to 20 years.[5]  On April 29, 2013, Appellant filed post-sentence motions, which the trial court denied by order entered on May 30, 2013.  Appellant filed a timely notice of appeal on June 13, 2013.[6]

On appeal, Appellant raises the following issues for our review.

> 1. Whether the [trial] court abused its discretion by refusing to grant [A]ppellant's post-sentence motion requesting arrest of judgment, where there had been a clear violation of [A]ppellant's right to a prompt trial under Pa.R.Cr.P. 600?
>
> 2. Whether the [trial] court had abused its discretion in refusing to grant a new trial where it had refused [A]ppellant's motion for a severance, refused to grant a mistrial and refused to give an essential requested instruction to the jury?
>
> 3. Whether the [trial] court abused its discretion in refusing to grant [A]ppellant's motion for reduction of sentence?

Appellant's Brief at 3.

Appellant, in her first issue, charges the trial court with an abuse of discretion in denying her various motions to dismiss her case for the Commonwealth's violation of her speedy trial rights under Rule 600.

---

[5]  Specifically, Appellant received 10 to 20 years' incarceration each for aggravated assault, robbery, and kidnapping to run concurrent to one another.  Appellant received a consecutive two years' probation for conspiracy.

[6]  Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant's Brief at 5. To address this issue we observe the following standards.

"When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012).

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after [a] hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

> …

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Peterson***, 19 A.3d 1131, 1134 (Pa. Super. 2011) (*en banc*), *affirmed*, 44 A.3d 655 (Pa. 2012) (citations omitted).

We recognize that the courts of this Commonwealth employ a three-step analysis to determine whether Rule 600 requires dismissal of the charges against a defendant.

> The first step in determining whether a technical violation of Rule 600 […] has occurred is to calculate the "mechanical run date." The mechanical run date is the date by which trial must commence under the relevant procedural rule. [T]he mechanical run date is ascertained by counting the number of days from the triggering event - e.g., the date on which … the criminal complaint was filed - to the date on which trial must commence under Rule [600]. Pa.R.Crim.P. [600(A)(3)].

*Commonwealth v. Preston*, 904 A.2d 1, 11 (Pa. Super. 2006) (internal citations omitted), *appeal denied*, 916 A.2d 632 (Pa. 2007). In the second step, we must "determine whether any excludable time exists pursuant to Rule 600(C)." *Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. Super. 2007), *appeal denied*, 948 A.2d 803 (Pa. 2008). Then, in the third step, "[w]e add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." *Id.*

It is well settled that any delay occasioned by a defendant is excludable time in the calculation of the adjusted run date. Pa.R.Crim.P. 600(C)(2), (3); *Preston*, *supra*. Furthermore, delays not attributable to a defendant but where the Commonwealth is found to have acted with due diligence in attempting to commence a timely trial but was prevented by circumstances beyond its control, is also considered excusable time. Pa.R.Crim.P. 600(G); *accord Commonwealth v. Wholaver*, 989 A.2d 883,

899 (Pa. 2010), *cert. denied*, **Wholaver v. Pennsylvania**, 131 S. Ct. 332 (2010).

> "Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." **Commonwealth v. Booze**, 953 A.2d 1263, 1273 (Pa. Super. 2008) (quotations and quotation marks omitted). "Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'" **Preston**, 904 A.2d at 14 (citation omitted).

**Commonwealth v. Lynch**, 57 A.3d 120, 124 (Pa. Super. 2012)

> Because the Commonwealth cannot control the calendar of a trial court, delay occasioned by the court's unavailability is usually excusable. However, the Commonwealth may, under some circumstances (*e.g.* a prolonged judicial absence), have a duty to seek other courtrooms to try the case. The extent of this duty depends on the specifics of each case. The guiding principle is, again, that the Commonwealth must exercise due diligence by putting forth a reasonable effort in light of the particular case facts. Along similar lines, delays caused by administrative decisions of the court, decisions over which the Commonwealth has no control, are generally excused.

**Commonwealth v. Riley**, 19 A.3d 1146, 1149 (Pa. Super. 2011) (citations omitted). Any time prior to trial, a defendant may move the trial court for dismissal of the charges if the Commonwealth has violated the Rule. Pa.R.Crim.P. 600(G).

At the November 8, 2012 hearing on Appellant's amended motion to dismiss, the parties stipulated to an exhibit describing the relevant time periods from the docket. N.T., 11/8/12, at 105. The mechanical run date for this case under Rule 600 was October 25, 2009, 365 days from the filing date of the criminal complaint. The parties agreed that the periods from October 20, 2009 to June 14, 2010 and from August 15, 2011 to April 16, 2012 were excludable due to Appellant's waiver of her speedy trial rights for those continuances, a total of 482 days. Appellant's Brief at 8-9; Commonwealth Brief at 15-18. This created an adjusted run date of February 22, 2011.

In contention are the two periods from June 14, 2010 to August 15, 2011 and from April 16, 2012 to October 22, 2012. Appellant's Brief at 8-9; Commonwealth brief at 15-18; Trial Court Opinion, 5/2/14, at 14. The trial court determined that these delays were the result of circumstances beyond the Commonwealth's control through which the Commonwealth proceeded in good faith, being ready for trial. *Id.*; *see also* N.T., 11/8/12, at 110-113. Appellant concedes that the postponements from June 14, 2010 to August 15, 2011 and from April 16, 2012 to October 22, 2012 were the result of judicial unavailability and scheduling concerns. Appellant's Brief at 7. Nevertheless Appellant argues, "[t]he Commonwealth must do everything reasonable within its [power] to guarantee that a trial begins on time, and has the burden of demonstrating by a preponderance of the evidence that it

exercised due diligence." *Id.*, *quoting* **Commonwealth v. Ramos**, 936 A.2d 1097, 1102 (Pa. Super. 2007), *quoting* **Commonwealth v. Matis**, 712 A.2d 10, 16 (Pa. 1998), *appeal denied*, 948 A.2d 803 (Pa. 2008). As an example, Appellant cites the language in **Riley**, **supra** holding the Commonwealth may be required to seek alternatives in the face of prolonged court unavailability. *Id.* at 10. "When judge's calendar is so overcrowded and the court must continue a jury trial for months, the situation constitutes a functional equivalent of 'a prolonged judicial absence'". *Id.* at 10, *quoting* **Riley**, **supra**. "Appellant maintains that the Commonwealth has a duty to seek other judges who could try the case for the same reason it should have the duty whenever a defendant's jury trial demand causes the next date to be beyond the adjusted run-date[] on that particular judge's calendar." *Id.* at 11.

The trial court determined the contested delays were occasioned by the unavailability of the trial court due to involvement with other cases and scheduling congestion. Trial Court Opinion, 5/2/14, at 14. It further found the Commonwealth exercised due diligence. We conclude the trial court's findings are supported by the record.[7]

---

[7] Because of our disposition within, we do not address whether additional excludable time was incurred by the timing of Appellant's various motions. "In **Commonwealth v. Hill**, 558 Pa. 238, 736 A.2d 578 (1999), the Pennsylvania Supreme Court recognized that the time period during which a defendant's pretrial motion is pending is not necessarily excludable for
*(Footnote Continued Next Page)*

Pertaining to the first contested period, the parties agree the inability to proceed at the scheduled trial date of June 14, 2010, was the result of then presiding Judge Linda Carpenter's unavailability due to her connection to another trial. Appellant's Brief at 8; N.T., 3/18/11, at 7. Thereafter, as reflected in the docket, Judge Carpenter, again unavailable, referred Appellant's outstanding pretrial motions to Judge Karen Shreeves-Johns. Judge Shreeves-Johns granted co-defendant's request for a continuance and referred the cases back. At the new appointed date before Judge Bronson, counsel for co-defendant was again unavailable. At the subsequent scheduling conference, a date of August 15, 2011 before Judge James Murray Lynn, was determined to be the "earliest possible date" for trial. Pertaining to the second contested period, on April 16, 2012, the newly assigned Judge Hill was presiding on another trial and co-defendant's counsel was again unavailable. October 22, 2012 was selected as the next available date for trial. It is not contested the Commonwealth was ready to proceed at the time of each continuance. Appellant's Brief at 9.

We agree with the trial court that under these circumstances, the Commonwealth exercised due diligence. This was not a case, as referenced in **Riley** of prolonged unavailability of the court. The instant case confronted a crowded court calendar, where the presiding judges were occupied with

*(Footnote Continued)* ─────────────

purposes of Rule 600." **Commonwealth v. Lynn**, 815 A.2d 1053, 1058-1059 (Pa. Super. 2003).

other duties, not absent from the court. We reject Appellant's attempt to equate court congestion as the "functional equivalent" of prolonged judicial absence. *See* Appellant's Brief at 10.

The passage from *Riley*, quoted by Appellant relative to the Commonwealth's duty to seek another court room or judge in the face of judicial absence, stems from the case of *Commonwealth v. Hawk*, 597 A.2d 1141 (Pa. 1991). Therein, delay in bringing Hawk to trial occurred because the trial judge was absent due to illness and vacation for five weeks. *Id.* at 1145. Instantly, it was not the absence of the assigned judge that occasioned the delays, but the full schedule of the court. This is not a case where the Commonwealth failed to exercise due diligence in the face of judicial absence. Rather, at each pertinent date the Commonwealth was ready to proceed but prevented by circumstances beyond its control. "Where the Commonwealth was prepared to proceed throughout the pendency of a case, it demonstrated that it was prosecuting the defendant's case with due diligence." *Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted). At each continuance, a scheduling conference with all parties participating settled on the earliest available date for trial. *See Lynch*, *supra* at 125 (citing cases holding the Commonwealth cannot control the trial court's calendar, and trial courts are not required to adjust their schedule to meet Rule 600 deadlines).

Neither does the Commonwealth's refusal to sever Appellant's case, when faced with a co-defendant's unavailability, implicate its due diligence. "On the contrary, this Court has held that the Commonwealth is not required to sever a defendant's case from a co-defendant's when faced with a possible Rule 600 violation." **Commonwealth v. Kearse**, 890 A.2d 388, 394 (Pa. Super. 2005) (citation omitted), *appeal denied*, 906 A.2d 1196 (Pa. 2006). Under these circumstances, we discern no error or abuse of discretion by the trial court in denying Appellants motions to dismiss for violation of Rule 600.[8]

Appellant's second question presented for appeal incorporates four distinct issues raised in her Rule 1925(b) statement. **See** Appellant's

---

[8] Both Appellant and the trial court discuss whether or not Appellant suffered prejudice from any delay. **See** Appellant's Brief at 13; Trial Court Opinion, 5/2/14, at 12. However, we note Appellant has only raised the alleged violation of Rule 600 as an issue on appeal, not a constitutional speedy trial claim.

> When evaluating Rule 600, there need be no discussion of whether a defendant is prejudiced because prejudice is shown simply by proving that the defendant suffered 365 days of non-excludable pretrial delay under facts showing that the Commonwealth did not exercise due diligence. Instead, a prejudice analysis is proper when evaluating whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution.

**Kearse**, **supra** at 395.

Concise Statement of Errors Complained of on Appeal, 9/3/13, at ¶¶ D, F, G, and H. All the claims impugn the trial court for failure to grant her post-sentence motions, to declare a mistrial, and grant a new trial. The specific issues raised include; 1) a challenge to the trial court's refusal to sever Appellant's case from co-defendant's; 2) a challenge to the trial court's decision to proceed with the trial *in abstentia*, following Appellant's failure to appear; 3) a challenge to the trial court's refusal to declare a mistrial when a co-defendant testified in a manner contradictory to Appellant counsel's opening statement; and 4) a challenge to the trial court's refusal to give a requested point for charge to the jury. *Id.*; Appellant's Brief at 14-16.

Prior to addressing the merits of Appellant's claim, we must first address the Commonwealth's claim that Appellant has waived these issues "for lack of development and support." Commonwealth's Brief at 28. Upon review, we conclude the four issues encompassed by Appellant's second question on appeal are waived for failure to sufficiently argue her positions in her appellate brief. Relative to each sub-issue, Appellant cites to no authority in support of her bald assertions of error, fails to address the authority relied on by the trial court and Commonwealth, and provides no cogent analysis or development of her claims. *See* Appellant's Brief at 14-16. Our Supreme Court held such briefing deficiencies result in waiver of an issue on appeal. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating, "where an appellate brief fails to provide any discussion of a

claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"), *cert. denied*, ***Johnson v. Pennsylvania***, 131 S.Ct. 250 (2010).[9]

In her final issue, Appellant alleges the trial court "abused its discretion by denying [her] post-sentence motion requesting reconsideration of sentence …." Appellant's Brief at 16. Specifically, Appellant claims the trial court failed "to give sufficient weight to [A]ppellant's mental state at the time of the commission of the crimes and that the person who committed the crimes… was a changed person." ***Id.*** at 18.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013).

> An appellant challenging the discretionary aspects of [her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence …; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

---

[9] Even absent waiver, we agree with the trial court's discussion of the merits of Appellant's claims as expressed in its May 2, 2014 opinion. Trial Court Opinion, 5/2/14, at 17-23.

> substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (internal quotation marks and citations omitted).

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (internal quotation marks and citations omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013). "If the Rule 2119(f) statement … provided fails to demonstrate a substantial question, this Court may refuse to accept the appeal." *Commonwealth v. Coulverson*, 34 A.3d 135, 142 (Pa. Super. 2011) (citation omitted).

Instantly, Appellant preserved her issue in her post-sentence motion and included a Rule 2119(f) statement in her appellate brief. In her Rule 2119(f) statement, Appellant attempts to couch her issue in the guise of the sentences imposed being "inconsistent with the Sentencing Code, and/or were contrary to the fundamental norms which underlie the sentencing process, and/or may have been based in part on impermissible factors." Appellant's Brief at 16. Beyond this bald assertion, Appellant does not articulate with any specificity in her Rule 2119(f) statement the reasons why

the sentence was improper. "[W]here [an] appellant's Rule 2119(f) statement contains no factual averments which suggest that the sentencing scheme as a whole has been compromised… the petition for permission to appeal must be denied." ***Commonwealth v. Williams***, 562 A.2d 1385, 1389 (Pa. Super. 1989) (*en banc*). Accordingly, on this basis alone we could deny Appellant's petition. Nevertheless, Appellant's argument makes clear her contention is that the trial court failed to adequately consider various mitigating factors. ***See*** Appellant's Brief at 16-19. "An argument that the sentencing court failed to adequately consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review." ***Commonwealth v. Ratushny***, 17 A.3d 1269, 1273 (Pa. Super. 2011) (citations and footnote omitted). Therefore, we conclude Appellant has failed to raise a substantial question and deny permission to appeal.

To recapitulate, we conclude the trial court did not abuse its discretion in denying Appellant's motions for dismissal based on Rule 600, as trial commenced within 365 days after accounting for all excludable and excusable delays. We further conclude Appellant has waived the various issues related to the denial of her post-sentence motion for new trial for lack of development in her Appellate brief. Finally, we conclude Appellant has failed to raise a substantial question in her challenge to the discretionary aspects of her sentence. Accordingly, we affirm the April 19, 2013 judgment of sentence.

Judgment of sentence affirmed.

Judge Wecht joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/21/2015</u>