**COMMONWEALTH of Pennsylvania, Appellee**

v.

**John LYNCH, Appellant.**

Superior Court of Pennsylvania.

Submitted July 9, 2012.
Filed Oct. 22, 2012.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: MUSMANNO, BOWES, JJ. and McEWEN, P.J.E.

OPINION BY MUSMANNO, J.:

John Lynch ("Lynch") appeals from the judgment of sentence imposed following his conviction of harassment. *See* 18 Pa. C.S.A. § 2709(a). We affirm.

The trial court has set forth the relevant underlying facts as follows:

Five years prior to the date in question, [Patricia DeMarco ("DeMarco")] began

to have interactions with [Lynch]. At this time, [DeMarco] was employed by Alfred Marroletti ["Marroletti"], a private attorney working for the Philadelphia Parking Authority ["PPA"], and her responsibilities included answering the telephones and the office door. [Lynch] owned several cars that had been impounded by the Parking Authority that he was contesting with Marroletti and various judges. [Lynch] had also filed lawsuits against, among others, the [PPA]. [Lynch] called Marroletti's office and spoke with [DeMarco] at least thirty times in these five years to discuss his impounded cars, each time threatening [DeMarco]. Other times[, Lynch] would come directly to the office and see [DeMarco] and drop off pleadings or "just voice his opinion." [DeMarco] described being afraid of [Lynch] during these interactions. Also during this time, a bolt was placed on the office door, which [DeMarco] learned had been placed there because of [Lynch's] actions related to [DeMarco]. At some point[,] a restraining order was taken out against [Lynch] for [DeMarco].

On Friday, April 16, 2011, [*sic*] [DeMarco] was employed as a legal assistant with the [PPA]. At approximately 5:15 p.m., after the office closed at 5:00 p.m., [DeMarco] answered a phone call from [Lynch]. He asked to speak with Dennis Weldon ["Weldon"], the legal counselor for the [PPA]. At this point, [DeMarco] told [Lynch] that Weldon was gone for the day. [Lynch] said that he wanted to discuss the impounding of several of his cars; specifically, that he wanted returned to him tools out of his 1973 Ford truck. [Lynch] used a "very angry and very threatening" tone in a "loud" voice whereby he "yell[ed] into the phone" at [DeMarco]. [Lynch] told [DeMarco] that if he did not get his tools

back, he would "com[e] with a shotgun and would shoot everyone at the [PPA]." [DeMarco] testified that the prior threats [Lynch] made when she worked for Marroletti, as well as [Lynch's] threat to use a shotgun to shoot everyone up, made her "afraid to leave the building" and she notified her manager.

Conversely, [Lynch] testified that it was a misunderstanding and that he told [DeMarco] that he was going to file "shotgun pleadings," by which he said he meant multiple complaints from different courts, against the director for the [PPA], Weldon, and [DeMarco].

Trial Court Opinion, 10/4/11, at 2–3 (citations omitted).

Lynch was arrested and charged with one count each of terroristic threats and harassment. On August 11, 2010, Lynch proceeded to a bench trial in the Philadelphia Municipal Court before the Honorable Thomas Gehert. After hearing the evidence, Judge Gehert found Lynch guilty of harassment and not guilty of terroristic threats. Judge Gehert sentenced Lynch to three to twelve months in prison with credit for time served and immediate parole. On August 19, 2010, Lynch filed an appeal for a trial *de novo* before the Philadelphia County Court of Common Pleas.

The *de novo* trial was initially listed for November 29, 2010; however, DeMarco did not appear. The trial court then scheduled the trial for the earliest possible date, January 14, 2011. Lynch filed a Motion to dismiss the charges under Pennsylvania Rule of Criminal Procedure 1013(G) because the *de novo* trial did not occur within 120 days of the appeal from the Municipal Court. The trial court denied this Motion. Thereafter, Lynch waived his right to a jury trial and proceeded to a bench trial. After hearing the evidence, the trial court found Lynch

guilty of harassment. The trial court sentenced Lynch to time served to one year in prison with immediate parole. The trial court also ordered Lynch to complete fifty hours of community service, anger management counseling, and to stay away from DeMarco.[1]

Lynch filed a timely Notice of appeal. The trial court ordered Lynch to file a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement. Lynch filed a timely Concise Statement and the trial court issued an Opinion.

On appeal, Lynch raises the following questions for our review:

1. Did not the trial court err in denying [Lynch's M]otion to dismiss for violation of Pa.R.Crim.P. 1013?

2. Did not the trial court err in allowing the prosecution to introduce evidence of other bad acts by [Lynch] when the prosecution had never filed notice as required by Pa.R.E. 404(b)(4)?

Brief for Appellant at 3.

In his first claim, Lynch contends that the trial court improperly denied his Motion to dismiss the case pursuant to Criminal Rule 1013(G) because the trial occurred 148 days after he had filed a Notice of appeal from the Municipal Court decision. *Id.* at 9. Lynch argues that the Commonwealth did not exercise due diligence in making sure DeMarco was present at the trial scheduled for November 29, 2011. *Id.* at 9, 11. Lynch asserts that the Commonwealth did not present any evidence that they attempted to issue DeMarco a subpoena. *Id.* Lynch claims that the mechanical and adjusted run date was December 17, 2010, because there were no delays by the defense and no excludable time. *Id.* at 10. Lynch argues that Criminal Rule 1013(G) does not support the trial court's reliance on the congestion of the court docket to deny his Motion to dismiss. *Id.* at 11–12.

Our standard of review for evaluating claims brought pursuant to Rule of Criminal Procedure 1013 is the same as that applied to claims made under Rule of Criminal Procedure 600. The purpose of the rules is similar, and the case law applies equally to both. When considering any "speedy trial" claim, the proper scope of review is limited to the evidence on the record from the evidentiary hearing and the findings of the trial court. If the hearing court denied relief under Rule 1013, appellate courts must view the facts in the light most favorable to the Commonwealth as the prevailing party. In assessing a Rule 1013 issue, we are confined to determining whether the trial court committed an "abuse of discretion" in reaching its decision.

*Commonwealth v. Preston,* 904 A.2d 1, 9 (Pa.Super.2006) (*en banc*) (footnote and citations omitted).

■ Pa.R.Crim.P. 1013 provides in relevant part that "[a] trial *de novo* in the Court of Common Pleas shall commence within a period of 120 days after the notice of appeal from the Municipal Court is filed." Pa.R.Crim.P. 1013(G). Similar to Criminal Rule 600, Rule 1013 has excludable time and excusable delay:

The first step in determining whether a technical violation of Rule 600 or Rule 1013 has occurred is to calculate the "mechanical run date." The mechanical run date is the date by which trial must commence under the relevant procedur-

---

1. The Commonwealth notes that Lynch violated his parole in September 2011, when he

was convicted of simple assault.

al rule. In a municipal court case, the mechanical run date is ascertained by counting the number of days from the triggering event—e.g., the date on which the preliminary arraignment occurred or on which the criminal complaint was filed—to the date on which trial must commence under Rule 1013. The mechanical run date can be modified or extended by adding periods of time in which the defendant causes delay. It then becomes an "adjusted run date." Rules 600 and 1013 take into account both "excludable time" and "excusable delay." "Excludable time" is defined by Rule 1013 itself as any period of time during which a defendant expressly waives his rights under the Rule. Delays caused by the unavailability of the defendant or counsel also are excludable, as are delays for continuances granted at the request of the defendant or counsel. "Excusable delay" is not expressly defined in either Rule 600 or in Rule 1013, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Preston*, 904 A.2d at 11 (citations omitted). The Commonwealth is entitled to an extension of time "upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." Pa.R.Crim.P. 1013(C)(1)(c). "Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Booze*,

953 A.2d 1263, 1273 (Pa.Super.2008) (quotations and quotation marks omitted). "Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'" *Preston*, 904 A.2d at 14 (citation omitted).

Here, Lynch filed his appeal from the Municipal Court's finding of guilt on August 19, 2010. Thus, the mechanical run date was December 17, 2010. Initially, the trial was set for November 29, 2010, well within the mechanical run date.

On that date, the main witness for the Commonwealth, DeMarco, did not appear. N.T., 1/14/11, at 6. DeMarco later testified that she was on vacation on November 29, 2010, and had not received notice of a trial on that date. *Id.* at 11. The Commonwealth noted that a subpoena had been sent to DeMarco pursuant to the Court of Common Pleas Case Management System ("CPCMS").[2] *Id.* at 14. The subpoena had been sent to DeMarco's place of work, the PPA, at 3101 Market Street in Philadelphia. *Id.* at 12. However, the subpoena did not list the specific floor of DeMarco's office. *Id.* at 12–13. DeMarco testified that any mailing sent to the PPA that failed to designate her floor is automatically sent to the Legal Department. *Id.* DeMarco stated that she had previously received subpoenas from the Commonwealth at the address; however, DeMarco indicated that she would receive the subpoena if the person obtaining it knew who she was and delivered the subpoena. *Id.* at 13. Due to DeMarco's absence, the trial court rescheduled the

---

**2.** The Commonwealth, in its brief, states that the CPCMS, through an automated process, generates a paper subpoena that is mailed to the witness. Brief for the Commonwealth at

8 n. 3. The Commonwealth notes that this automated process is used systematically throughout the Philadelphia courts. *Id.*

hearing for the earliest possible date, January 14, 2011. *Id.* at 4, 15. The trial court indicated that this date was chosen due to its congested docket. *Id.* at 15–16. Thereafter, the Commonwealth contacted DeMarco, and subsequently sent a new subpoena with the new trial date. *Id.* at 12–13.

■ Here, the trial court denied Lynch's Rule 1013 Motion because DeMarco did not appear at the November 29, 2010 trial based upon a misunderstanding and the rescheduled trial was given the earliest possible date on the trial court's calendar. *See* N.T., 1/14/11, at 15–16; *see also* Trial Court Opinion, 10/4/11, at 5. Based upon our review of the record, we conclude that the trial court did not abuse its discretion in making its finding. Indeed, in this case, the Commonwealth sent a subpoena to DeMarco for the November 29, 2010 trial to an address that it had previously sent subpoenas received by DeMarco. However, due to a failure to include the floor where DeMarco's office is located, and the failure of the person receiving the subpoena to deliver it to DeMarco, DeMarco did not receive the subpoena. Furthermore, DeMarco was on vacation on the date of the trial. Under these facts, the Commonwealth exercised due diligence in subpoenaing DeMarco as it had on previous occasions, and her absence was beyond the Commonwealth's control. *See Commonwealth v. Jones,* 886 A.2d 689, 701 (Pa.Super.2005) (stating that "[t]he matters of availability and due diligence must be judged by what was done by the authorities rather than by what was not done.") (citation omitted); *see also Commonwealth v. Hunt,* 858 A.2d 1234, 1243 (Pa.Super.2004) (*en banc*) (stating that circumstances occasioning the postponement of the trial due to the unavailability of a minor witness was out of the Commonwealth's control). Thus, the Commonwealth attempted to bring Lynch to trial prior to the expiration of the mechanical run date. Moreover, the trial court issued a new trial date that was past the mechanical run date due to a congested court calendar. *See Commonwealth v. Trippett,* 932 A.2d 188, 198 (Pa.Super.2007) (stating that "the Commonwealth cannot control the schedule of the trial courts[.]"); *Preston,* 904 A.2d at 14 (confirming that trial courts are not required to rearrange their schedules to accommodate deadlines imposed by Pennsylvania's speedy trial procedural rules). Based upon the foregoing, we conclude that Lynch's first claim is without merit. *See Preston,* 904 A.2d at 13–14; *Hunt,* 858 A.2d at 1244.

In his second claim, Lynch contends that the trial court abused its discretion in allowing evidence of prior bad acts without providing him with written notice as required by Pennsylvania Rule of Evidence 404(b). Brief for Appellant at 12, 14. Lynch argues that he was charged with a single incident of harassment on April 16, 2010, and that the Commonwealth introduced prior incidents where he had allegedly threatened DeMarco. *Id.* at 12. Lynch asserts that the Commonwealth did not show "good cause" as required under Rule 404(b) for the lack of notice. *Id.* Lynch claims that he relied upon the Commonwealth's "implicit representation" that it would not introduce the evidence. *Id.* at 14. Lynch argues that he was surprised by the evidence and was unprepared to deal with it. *Id.* at 13.

■ "In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Pa.R.E. 404(b)(4). The purpose of this rule "is to prevent unfair surprise, and to give the

defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." Pa.R.E. 404, cmt. However, there is no requirement that the "notice" must be formally given or be in writing in order for the evidence to be admissible. *Commonwealth v. Mawhinney*, 915 A.2d 107, 110 (Pa.Super.2006).

■ Here, the affidavit of probable cause stated that DeMarco had numerous conversations with Lynch with regards to his suspended license and towed vehicles. *See* Affidavit, 4/19/10, at 1. The affidavit further indicated that Lynch had encountered DeMarco at the PPA and that Lynch had been argumentative and aggressive toward the PPA staff. *See id.* Further, Lynch was provided with discovery, which included DeMarco's statements referring to Lynch's conduct over a five-year period. N.T., 1/14/11, at 22–23. Moreover, De-Marco testified to her prior dealings with Lynch at the trial in Municipal Court. *See* N.T., 8/11/10, at 4–5, 7–9, 13; *see also* N.T., 1/14/11, at 22. Accordingly, we conclude that Lynch has not demonstrated unfair surprise and that he had sufficient notice of the proffered evidence. *See Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 118, n. 2 (2001) (concluding that defendant had notice pursuant to Rule 404(b)(4) where the Commonwealth provided defendant with discovery containing

evidence of the prior bad acts); *Mawhinney*, 915 A.2d at 110 (concluding that defendant had reasonable notice of the proffered evidence where the evidence had been discussed during pre-trial conferences).[3] Thus, Lynch's second claim is without merit.[4]

Judgment of sentence affirmed.

---

**3.** Lynch argues that the reasoning in *Commonwealth v. Wade*, 867 A.2d 547 (Pa.Super.2005), supports his contention. Brief for Appellant at 14. In *Wade*, the trial court allowed the Commonwealth to present, on rebuttal, identification testimony that had previously been precluded as a sanction for the Commonwealth's failure to comply with the rules of discovery. *Wade*, 867 A.2d at 552. This Court concluded that the admission of such testimony was error because the discovery rules would be violated and the defendant would be unfairly surprised and ambushed by having to deal with evidence that had been previously precluded. *Id.* at 553. However, unlike *Wade*, in this case, the trial court had

not previously precluded Lynch's prior acts. Further, Lynch has not cited to anything in the record to suggest that the Commonwealth agreed to not introduce the prior acts at trial. *See* Pa.R.A.P. 2119(a). Finally, as noted above, Lynch was on notice of all of the relevant information. Thus, based upon the foregoing, the reasoning in *Wade* is inapplicable to this case.

**4.** We note that Lynch has not argued that the admission of the evidence resulted in the trial judge finding him guilty of harassment based upon the events of April 16, 2011. *See* Pa. R.A.P. 2119(a).