J.S29037/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS MARTIN | : | |
| | : | |
| Appellant | : | |
| | : | No. 1659 WDA 2015 |

Appeal from the Judgment of Sentence June 11, 2015
in the Court of Common Pleas of Elk County Criminal Division
at No(s): CP-24-CR-0000140-2013

BEFORE: BENDER, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 29, 2016**

Appellant, Nicholas Martin, appeals from the judgment of sentence entered in the Elk County Court of Common Pleas following a jury trial and his convictions for murder in the first degree[1] and abuse of corpse.[2] Appellant challenges the admission of a prior "bad act" pursuant to Pa.R.E. 404(b). We affirm.

Appellant's conviction arises from the killing of his former girlfriend, Allyssa Forsyth ("Decedent"). Three days prior to the murder, Appellant hit Decedent on the side of the face with her cell phone, spit on her, and said, "Next fucking time I see you, I'll kill you." N.T. Trial, 3/26/15, at 45. In the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 5510.

early morning hours of March 23, 2013, Appellant stabbed Decedent one hundred and twelve times in his apartment. After initially stabbing Decedent with a screwdriver, Appellant stopped, went to the kitchen to get a knife, and continued to stab Decedent until she was dead. N.T., 3/25/15, at 66. He disposed of Decedent's body in a steep wooded area known as Sandy Beach. N.T., 3/27/15, at 90-91. After the murder, Appellant texted Decedent's mother using Decedent's phone, to conceal the murder. *Id.* at 100-02. Appellant was ultimately arrested and charged with, *inter alia*, criminal homicide. At trial, Appellant did not deny the killing, but claimed he acted under the heat of passion or was voluntarily intoxicated. N.T., 3/25/15, at 36-42. Both the Commonwealth and Appellant called expert witnesses to opine on Appellant's mental state at the time of the killing.

Jessie Pino, who was a mutual friend of Appellant and Decedent, testified for the Commonwealth. He stated, in relevant part, that he and Appellant were together from approximately 9:00 p.m. until 2:40 a.m., shortly before Appellant killed Decedent. *Id.* at 53-59. During that time, the two men consumed an entire bottle of Courvoisier cognac while playing "beer pong." *Id.* at 56. Pino explained that Appellant had dropped him off at his home, but had returned in the morning hours of March 23, 2013. At that time, Appellant told Pino he had picked up Decedent from a bar, had sex with her, and had subsequently killed her. *Id.* at 64-65. Appellant provided Pino with graphic details of the killing. *Id.* at 64-67.

The following exchanges occurred during Pino's direct examination by the Commonwealth:

> [Commonwealth]. And what else -- you were playing beer pong. Did you -- anything else happen that night?
>
> * * *
>
> A. As we were playing beer pong, [Appellant] was into martial arts and judo, and I was a wrestler and also into martial arts. As we were playing throughout the night, we started to wrestle a little bit. He wanted to show me a move, so I had locked up with him as --
>
> [Appellant's counsel]. Objection, Your Honor. If we could approach?
>
> * * *
>
> (The following discussion was had at side-bar.)
>
> [Appellant's counsel]. Your Honor, I think I know where this testimony is going. He's going to testify that they got down on the floor; [Appellant] grabbed him or wrestled him to the floor and then tried to lick him. And I don't think that's relevant. I think it's prejudicial. I think it's a bad act that they're trying to get in, and I don't see how it's relevant.
>
> [Commonwealth]. As far as I know, kissing or licking another human being isn't a crime unless it's an indecent assault. It's indicative of his state of mind that night. It also may be relevant in the psychiatric testimony later.
>
> THE COURT: Could be. So I'm going to overrule the objection and allow the question to be asked.
>
> (End of discussion at side-bar.)
>
> * * *
>
> [Commonwealth]. . . . You said that you -- [Appellant] and you were wrestling, and you locked up and -- what happened?

- 3 -

A. [Appellant] had taken me down to the ground, and I was laying down flat on my back and he was on top of me. He went into like almost kissing me. And when I turned away, he licked my face and I got a rug burn on the side of my head. And I had then said, Whoa, whoa, whoa.

And he said something about being drunk and he said, Oh. My bad.

But I was very uncomfortable. That's not something that ever happened before, and -- it was uncomfortable for me.

N.T., 3/25/15, at 56-58.

Pino subsequently referred to the nature of his encounter with Appellant as "homosexual" during direct examination, Appellant's cross-examination, and the Commonwealth's further direct examination, after recalling him to testify. *See* N.T., 3/25/15, at 62 (indicating Pino told his brother about the "homosexual encounter" after Appellant dropped Pino off at home), 107 (responding to Appellant's counsel's questions regarding whether Pino felt uneasy around Appellant by referring to the "homosexual encounter"); N.T., 3/26/15, at 112 (interrupting the Commonwealth's question by referring to the "uncomfortable homosexual encounter"). Appellant did not object to or move to strike Pino's characterization of the incident as a "homosexual encounter."

Lastly, the Commonwealth, in its closing argument, stated Appellant "made a pass at Jessie [Pino]." N.T., 3/30/15, at 64. Appellant did not object to or move to strike this characterization. The Commonwealth

- 4 -

essentially argued that Appellant had killed Decedent in a despondent rage after Pino had rejected his advances and after Decedent began to leave him on the early morning in question. *Id.* at 65.

The jury found Appellant guilty of first-degree murder and abuse of a corpse. On June 11, 2015, the trial court sentenced Appellant to a term of life imprisonment for murder and a concurrent term of one to two years' imprisonment for abuse of a corpse. Appellant filed a timely post-sentence motion challenging the admittance of Pino's testimony regarding the "homosexual encounter" and his lack of notice thereof pursuant to Rule 404(b).

In an October 13, 2015 order, the trial court denied Appellant's motion and issued a memorandum opinion in support thereof. The trial court specifically found that the testimony in question was properly admitted under Rule 404(b) because it was relevant as part of the sequence of events on the night of the murder and because it was probative as to Appellant's state of mind and level of intoxication before the killing. Trial Ct. Op, 10/13/15, at 2-3. Further, the trial court determined that Pino's references to a homosexual encounter was not indicative of a "bad act" and was not so prejudicial as to require a new trial. *Id.* at 3-4. Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive Rule 1925(a) opinion incorporating the reasoning set forth in its memorandum opinion.

Appellant raises the following issue on appeal:

> Did the trial court abuse its discretion in allowing the Commonwealth, during jury trial in this homicide case, to introduce irrelevant and prejudicial testimony, through Commonwealth witness, Mr. Jessie Pino, that [Appellant] engaged in crimes, wrongs, or other acts in violation of Pa.R.E. 404(b), requiring the grant of a new trial?

Appellant's Brief at 4.[3]

Appellant argues that the trial court erred by admitting evidence of his attempt to lick or kiss Jessie Pino because such evidence was not relevant to his state of mind at the time of the murder and constituted a "bad act" under Rule 404(b). Appellant contends that his state of mind hours before the killing was not relevant because his defense focused on "the heat of passion" based on something Decedent said immediately before the killing. Further, Appellant claims that he did not have sufficient notice, as required under Rule 404(b)(3), of the characterization of the incident as

---

[3] On March 23, 2016, during the pendency of this appeal, Appellant filed a *pro se* "Petition to Amend Direct Appeal Petition," in the trial court. Appellant, who was 22 years old at the time of the killing, sought relief under **Miller v. Alabama**, 132 S. Ct. 2455 (2012). The petition was forwarded to this Court, and this Court issued a **Jette** letter to Appellant's counsel. Counsel has not filed a petition on Appellant's behalf.

It is axiomatic that "there is no constitutional right to hybrid representation either at trial or on appeal." **Commonwealth v. Jette**, 23 A.3d 1031, 1038 (Pa. 2001) (quoting **Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993)). Accordingly, because Appellant was represented by counsel, Appellant's *pro se* petition is a legal nullity for the purposes of this appeal. **See id.**

"homosexual" and that such a label caused undue prejudice. We conclude that any error in the admission of Pino's testimony was harmless.

It is well settled that "[r]ulings on the admissibility of evidence are within the discretion of the trial judge, and such rulings form no basis for a grant of appellate relief absent an abuse of discretion." *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008) (citiation omitted). Further, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188-89 (Pa. Super. 2009). "[A]n appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) (citations omitted).

Pennsylvania Rule of Evidence 404(b) provides, in relevant part:

**(b) Crimes, Wrongs, or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

> (3) *Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1)-(3).

In the context of a Rule 404(b) analysis, we note:

> While it is true that evidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence may be admissible where relevant for another purpose. Examples of other such relevant purposes include showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, or to establish identity. . . . [T]he evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. Of course, in addition to the relevance requirement, any ruling on the admissibility of evidence is subject to the probative value/prejudicial effect balancing that attends evidentiary ruling.

*Powell*, 956 A.2d at 420 (citations omitted).

The Commonwealth must provide reasonable notice of the bad acts evidence it intends to introduce. Pa.R.E. 404(b)(3); *Commonwealth v. Lynch*, 57 A.3d 120, 125 (Pa. Super. 2012). However, "[t]here is no requirement that the 'notice' must be formally given or be in writing in order for the evidence to be admissible." *Id.* at 126.

Further, we note that even erroneously admitted evidence of "bad acts," will not necessarily require a new trial:

> Not all improper references to prior bad acts will mandate a new trial, however. Mere passing reference to criminal

- 8 -

activity will not require reversal unless the record indicates that prejudice resulted from the reference. Harmless error is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

**Commonwealth v. Stafford**, 749 A.2d 489, 496-97 (Pa. Super. 2000) (internal citations omitted).

Significantly, "the harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." **Commonwealth v. Hairston**, 84 A.3d 657, 671 (Pa. 2014) (citations omitted). Specifically:

Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Id.** at 671-72 (citations omitted).

In the case *sub judice*, even assuming the evidence that Appellant attempted to kiss or lick Pino was admitted in error, we conclude that the harmless error doctrine applies.[4]  **See Hairston**, 84 A.3d at 671.  The

---

[4] Although the Commonwealth did not present a specific harmless error argument on appeal, this Court may consider such argument *sua sponte* as

substantial evidence presented at trial established that Appellant threatened to kill the Decedent three days prior to the murder. N.T., 3/26/15, at 45. Appellant admitted stabbing Decedent over one hundred times with both a screwdriver, and after a break in the violent act, a knife. N.T., 3/25/15, at 66. Thereafter, Appellant attempted to conceal the crime via impersonating Decedent by texting Decedent's mother with Decedent's cell phone. N.T., 3/27/15, at 100-02. Appellant also admitted disposing of Decedent's body in a remote area. *Id.* at 90-91. Given the substantial, properly admitted, and uncontradicted evidence of Appellant's guilt, it strains reason to conclude that the admission of Pino's characterization of his encounter with Appellant as "homosexual" contributed to the verdict. *See Hairston*, 84 A.3d at 671. Accordingly, we decline to conclude that a new trial is warranted because any error in the admission of the evidence in question constituted harmless error. *See Stafford*, 749 A.2d at 496-97.

In addition, we conclude that Appellant's argument that he did not have sufficient notice of the Commonwealth's intention to bring forth evidence regarding the face licking/kissing incident is also without merit. Appellant acknowledges that he did have evidence of the incident in general, as evidenced by his objection prior to Pino's testimony at trial, but avers that he did not have sufficient evidence of Pino's characterization of the incident

---

we may affirm a valid judgment based upon any reason appearing of record. *See Moore*, 937 A.2d at 1073.

as "homosexual." Appellant's Brief at 15. However, the Commonwealth need only provide information regarding the general nature of the intended testimony. *See Lynch*, 57 A.3d at 125. Here, Appellant had ample notice of the general nature of Pino's intended testimony, specifically regarding Appellant's attempt to kiss or lick Pino. N.T., 3/25/15, at 56-58. Therefore, we decline to conclude that the trial court erred by determining that Appellant had proper notice of Pino's intended testimony. Thus, we affirm Appellant's judgment of sentence, albeit partially on other grounds. *See Moore*, 937 A.2d at 1073.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/29/2016