J-S41001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL CINTRON | : | |
| | : | |
| Appellant | : | No. 63 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 9, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003076-2022

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED DECEMBER 9, 2024**

Angel Cintron (Appellant) appeals from the judgment of sentence imposed following his jury convictions of two counts of aggravated assault, and one count each of criminal trespass, recklessly endangering another person (REAP), and simple assault.[1]  We affirm.

The trial court summarized the relevant factual history:

> On July 6, 2021, Carl Jennett, Jr. ("Jennett")[,] was operating his motor vehicle on Beaver Street in Bristol Borough, Bucks County, Pennsylvania.  Jennett testified that [Appellant] was driving [his] motor vehicle directly behind him.  When Jennett was stopped at a stop sign on Beaver Street, [Appellant] pulled around and passed Jennett[,] who remained stopped.  [Appellant] continued on Beaver Street and Jennett followed him.  At the next stop sign, Jennett pulled around and passed [Appellant] as [Appellant] was stopped at the stop sign.  After Jennett passed [Appellant], [Appellant] threw a water bottle at the rear of Jennett's vehicle, and Jennett pulled over to the side of the road.

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and (4), 3503(a)(1)(i), 2705, and 2701(a)(1).

[Appellant] pulled next to Jennett's vehicle and the two exchanged words. Jennett identified [Appellant] as the operator of the other vehicle.

At some point, the two drivers separated, and their vehicles were no longer following one another. Later, while Jennett was stopped at the stop sign at or near the intersection of Corson Street and Spring Street, Jennett saw [Appellant's] vehicle approaching from Jennett's left. Jennett continued straight on Corson Street and turned right onto Bristol Pike. [Appellant] followed directly behind Jennett. After turning onto Bristol Pike, Jennett heard a gunshot, looked in his side-view mirror, and saw "the arm, the gun and the flash." Jennett then accelerated[,] and [Appellant] began to chase him on Bristol Pike. While being chased, Jennett was able to call 911 to report that he was being chased and shot at. Jennett was able to describe the gun he saw [Appellant] shooting at him as "a silver pistol or revolver," "like a chrome silver," "like a hand size … literally like pocket size." As the chase was ending, Jennett testified [Appellant] "let off two more shots" and then made a U-turn on Bristol Pike. Jennett then pulled into a 7-Eleven parking lot[,] where he was met by Officer Kevin Jackson from the Bristol Township police[,] who took a written statement from Jennett and began an investigation.

Trial Court Opinion, 3/27/24, at 1-2 (citations to record omitted).

Appellant's then-girlfriend, Aldiry Agramonte Castillo (Castillo), also testified at trial:

[Castillo] testified that she was a passenger in her vehicle[,] which was being operated by [Appellant] on July 6, 2021. According to Castillo, "At every stop sign[, Appellant and Jennett] were switching in front of each other." After the initial encounter between [Appellant] and Jennett, [Appellant] drove to Castillo's house at 703 Pine Street, Bristol Borough, Bucks County, dropped Castillo off[,] and left again in her car. After a period of time[, Appellant] returned to Castillo's house and parked her car in the garage. When [Appellant] returned to Castillo's house, [Appellant] told Castillo that he shot at the other driver but did not know if he hit him. On cross-examination, Castillo testified[,] "[Appellant] dropped me off and then he left. Then he came back …." Shortly after [Appellant] returned, the police began to arrive at [Castillo's] home. Unbeknownst to the police, [Appellant] and

Castillo fled Castillo's house and went, uninvited, to a neighbor's house …[,] where they stayed the rest of the night, until the police left the area. Eventually, several Bristol Borough and Bristol Township police officers, together with the Bucks County SWAT team[,] secured the area around 703 Pine Street believing [Appellant] was in that residence.

*Id.* at 2-3 (citations to record omitted).

The magisterial district judge issued a warrant for Appellant's arrest.

Ultimately, Appellant was apprehended in Philadelphia on October 7, 2021.

Joseph Domico [(Officer Domico)], a Philadelphia police officer and member of the FBI task force, testified that on October 7, 2021[,] he set up surveillance in the area of a garage in Philadelphia where [Appellant] was known to frequent. [Officer] Domico testified that he saw [Appellant] arrive at the garage. When he arrived, [Appellant] was seen exiting a minivan and walking into the garage with a black satchel over his left shoulder. The FBI task force moved in, executed a search warrant on the garage, and [Appellant] was arrested on the Bristol Borough charges. The black satchel [Appellant] was seen carrying was retrieved during the arrest and was found to contain two guns. One of the guns in the bag was a black handgun with a gray top.

*Id.* at 3 (citations to record omitted).

The Commonwealth charged Appellant with the above-described offenses, as well as firearms not to be carried without a license, persons not to possess firearms, an additional count of criminal trespass, criminal attempt – propulsion of missiles into an occupied vehicle, and criminal attempt – propulsion of missiles onto a roadway.[2]

_____

[2] 18 Pa.C.S.A. §§ 6105, 6106, 3503(a)(1)(ii), 901.

- 3 -

On February 2, 2023, Appellant filed an omnibus pre-trial motion seeking severance of the persons not to possess firearms charge. The trial court granted Appellant's motion to sever.

Prior to trial, the Commonwealth dismissed the criminal trespass charge under Crimes Code section 3503(a)(1)(ii). The Commonwealth also *nolle prossed* the severed charge of persons not to possess firearms.

The case proceeded to a jury trial on June 5-7, 2023. Relevant to this appeal, the Commonwealth introduced at trial a photograph of a 9-millimeter Cobra handgun. **See** Exhibit C-12. Officer Domico testified the handgun was recovered from Appellant's satchel at the time of his arrest.[3] **See** N.T., 6/6/23, 188-89. Prior to starting the final day of trial, and outside the presence of the jury, the parties discussed a purported discrepancy concerning the handgun. Appellant's trial counsel, Riley M. Downs, Esquire (Attorney Downs),[4] stated he had received a document the prior evening from

---

[3] Appellant requested an "offer of proof" prior to the introduction of Exhibit C-12 and Officer Domico's testimony on the bases that 1) the handgun used in the assault was not easily identifiable, and the introduction of Exhibit C-12 would improperly suggest to the jury that the depicted Cobra handgun was connected to the assault; and 2) the Commonwealth did not provide written notice of its intent to introduce evidence under Pa.R.E. 404(b). **See** N.T., 6/6/23, at 176-80.

[4] Appellant was represented by both Attorney Downs and Stephanie Moyer, Esquire (Attorney Moyer).

Appellant's counsel in his Philadelphia case.[5] *See* N.T., 6/7/23, at 4. In particular, Attorney Downs stated he received a report indicating the recovered firearm was not operable, as well as a report that "contradicts the testimony of [Officer Domico] as to how the gun was recovered, where it was recovered[,] and the circumstances of that arrest [(collectively, the Philadelphia reports)]." *Id.* Attorney Downs argued the Philadelphia reports constituted *Brady*[6] material, which the Commonwealth had not disclosed to the defense. *Id.* The assistant district attorney replied that the Commonwealth was not aware of the Philadelphia reports. *Id.* at 5, 10.

Attorney Downs requested a mistrial, which the trial court denied. Attorney Downs later submitted the Philadelphia reports to the trial court. *See* Exhibits DM-1 (Philadelphia Police Department case report) and DM-2 (Firearms Identification Unit lab report). The Philadelphia reports were created in connection with the Philadelphia case. *See* N.T., 6/7/23, at 14.[7]

Attorney Downs requested a continuance in order to subpoena additional witnesses who could provide testimony concerning the Philadelphia

_____

[5] According to Attorney Downs, the Philadelphia case stemmed from Appellant's arrest in the instant matter, and the charges were related to Appellant's possession of firearms. *See* N.T., 6/7/23, at 6-7.

[6] *Brady v. Maryland*, 373 U.S. 83 (1963). Appellant abandons his *Brady* claim on appeal.

[7] The Commonwealth offered the Court of Common Pleas docket sheet for Appellant's Philadelphia case. *See* Exhibit CM-4.

reports. ***See id.*** at 19. The trial court denied the defense motion for continuance, reasoning that Appellant himself was in possession of the information at the time he entered a guilty plea in the Philadelphia case on April 14, 2023. ***Id.***

The jury found Appellant guilty of two counts of aggravated assault, and one count each of criminal trespass, REAP, and simple assault. The jury found Appellant not guilty of firearms not to be carried without a license, and two counts of criminal attempt. On November 9, 2023, the trial court sentenced Appellant to 8 to 20 years in prison for one aggravated assault conviction, and a consecutive 1 to 2 years in prison for his criminal trespass conviction. For all remaining counts, the court entered a finding of guilt with no further penalty. Additionally, the trial court directed Appellant's sentence to be served consecutive to any other sentence Appellant was serving at that time.

Appellant filed a timely post-sentence motion challenging the weight of the evidence, as well as the discretionary aspects of his sentence. The trial court denied Appellant's post-sentence motion on November 22, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

A. Did the trial court err in admitting evidence regarding firearm(s) recovered from Appellant at the time of his arrest[,] which occurred more than three months after the incident?

B. Did the trial court err in denying Appellant's request for a continuance?

Appellant's Brief at 4.

In his first claim, Appellant argues the trial court erred by admitting evidence of firearms recovered from Appellant at the time of his arrest. **See** **id.** at 14-29. Appellant offers four arguments in support his claim, which we address separately, albeit in a different order than Appellant presents them.

First, Appellant argues the Commonwealth failed to provide proper notice of its intention to offer the firearms evidence, in accordance with Pa.R.E. 404(b). Appellant's Brief at 23.[8] Appellant acknowledges the requirement that such notice be "written" was added to Rule 404 via a December 2, 2021, amendment to Rule 404. **Id.**[9] Appellant contends the trial court erroneously applied the prior version of the rule in determining Appellant had reasonable notice of the Commonwealth's intention to introduce the firearms evidence. **Id.** at 25-26. Additionally, Appellant claims the "good cause" exception to Rule 404(b)'s notice requirement does not apply. **Id.** at 27-28.

The Commonwealth counters that while Rule 404(b) requires the Commonwealth to provide "written" notice, it "still does not require that notice to be in any particular form or that it be formally filed as a pretrial motion to admit other acts." Commonwealth Brief at 16. The Commonwealth argues it had provided the defense with Exhibit C-12 and had written, email

---

[8] The trial court did not address this argument in its Rule 1925(a) opinion.

[9] The effective date of amended Rule 404 was April 1, 2022.

conversations as well as verbal conversations with trial counsel regarding the evidence. *Id.* at 17.

Rule 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" which is used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Subsection (b)(2) permits such evidence if it is

> admissible for another purpose, such as providing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(2). Pursuant to subsection (b)(3), the prosecution in a criminal case

> must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(3).

As this Court has explained, the purpose of Rule 404(b)(3) "is to prevent unfair surprise, and to give the defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." *Commonwealth v. Lynch*, 57 A.3d 120, 125-26 (Pa. Super. 2012) (citation omitted). The comment to Rule 404 also provides that when notice of presentation of 404(b) evidence "is provided during trial after a finding of good cause, the court may

- 8 -

need to consider protective measures to assure that the proponent is not prejudiced." Pa.R.E. 404, cmt.

Caselaw addressing pre-amendment Rule 404 has consistently stated "there is no requirement that the 'notice' must be formally given or be in writing in order for the evidence to be admissible." *Lynch*, 57 A.3d at 126. While the legislature, in amending Rule 404, added the requirement that such notice be in writing, it did not add a requirement that the writing be formal, *i.e.*, in the form of a pretrial motion.

Instantly, during trial, the following discussion took place during a sidebar:

> [Attorney Moyer]: And I would note that this is 404(b) evidence that [the Commonwealth is] attempting to introduce, and it requires a notice in advance in writing prior to trial if [the Commonwealth is] intending to introduce it, and that was not done.
>
> [Assistant District Attorney]: Your Honor, the information concerning the photo of this specific firearm -- I will backtrack to the description -- would match up to the description that various witnesses have given. So this definitely is relevant information.
>
>   The fact that [the firearm] was found on [Appellant] specifically when he's arrested for these charges.
>
>   In addition, this photo [C-12] has been provided to defense. In fact, I have had a specific conversation with defense counsel with e-mails, as well as verbal conversations about how to handle this issue. There is mention of the defense filing a motion to preclude. Nothing has been filed. This is the first I'm [] hearing that it is now still, apparently, an issue.
>
> THE COURT: Okay. I think … the testimony is admissible.
>
>   ….

[Attorney] Downs: The burden is on the Commonwealth. If the information would have been subject to a 404(b) motion, they need to file it to have the hearing prior to trial for it to be admitted.

THE COURT: Okay, I got it.

N.T., 6/6/23, at 178-80.

Though the Commonwealth did not formally file a pretrial motion stating its intention to admit Rule 404(b) evidence, the record indicates the Commonwealth notified the defense through written email communication. *See id.* Appellant does not dispute that his counsel participated in email exchanges concerning the firearms evidence. Under these circumstances, the Commonwealth's failure to file a formal pretrial motion did not frustrate the purpose of Rule 404(b)(3). Accordingly, we discern no abuse of the trial court's discretion in admitting the firearms evidence notwithstanding the lack of a formal pretrial Rule 404(b) notice.

Next, Appellant claims the firearm evidence was irrelevant, and not admissible under the "similar-weapons exception." Appellant's Brief at 14-15; *see also id.* at 15-19. Appellant contends the Commonwealth failed to lay a proper foundation to establish the relevance of the firearm evidence. *Id.* at 20. According to Appellant, the Cobra handgun depicted in Exhibit C-12 does not match the description provided by Jennett. *Id.* at 21.

The Commonwealth counters the trial court properly admitted the evidence under the similar weapons exception. Commonwealth Brief at 10. The Commonwealth argues any inconsistencies between Jennett's description

- 10 -

of the weapon used in the incident, and the handgun found at the time of Appellant's arrest, go to the weight rather than admissibility of the evidence. *Id.* at 13. According to the Commonwealth, the similarities between the handgun described by Jennett and the handgun recovered are sufficient to permit the jury to infer a likelihood that the gun recovered was used in the shooting. *Id.*

Regarding a trial court's admission of evidence, this Court has recognized:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted).

"The threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Pa.R.E. 401(a). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402; *see also Yale*, 249 A.3d at 1022. Relevant evidence may be excluded

if its probative value is outweighed by a danger of unfair prejudice or misleading the jury. Pa.R.E. 403.

Regarding the similar weapon exception, our Supreme Court has explained:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact the accused had a weapon or implement suitable to the commission of the crime charged … is always a proper ingredient of any case for the prosecution. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of the evidence. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime.

*Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (citations and some quotation marks omitted).

"[A] weapon may not be introduced solely based on similarity." *Commonwealth v. Holt*, 273 A.3d 514, 537 (Pa. 2022). "The theory of the exception is that the weapon possessed **could have been** the weapon used…." *Christine*, 125 A.3d at 400 (emphasis added). *Cf. id.* (concluding a shank recovered from the appellant's prison cell was not admissible under the similar weapon exception, where a razor blade was used in the crime charged).

Instantly, Jennett identified Appellant as the individual involved in the July 6, 2021, incident. *See* N.T., 6/6/23, at 52. Jennett described Appellant driving in a different direction, away from Jennett, but later returning to the area. *See id.* at 56-59. Jennett testified he heard the first gunshot when

Appellant's vehicle returned to a position behind Jennett's vehicle. *See id.* at 59. Jennett observed "the gun and the flash" from his sideview mirror. *See id.* at 59-60; *see also id.* at 62 (stating Appellant's vehicle was approximately two car lengths behind Jennett's vehicle at the time of the first shot).

Jennett offered the following description of the firearm:

[ADA]: And as far as after that first shot, I believe you were going into a description of what specifically you saw [Appellant] doing in his vehicle?

[Jennett]: Yes, that's when I did look in my side-view mirror and … I seen [Appellant's] arm or an arm out the window with -- I believe it was a silver pistol or revolver, and that's when I first seen that first initial flash.

Q: And when you're saying silver, are we talking about like a bright silver or chrome silver or something else?

A: I'd say more like a chrome silver. I didn't really get too much of a look at the gun before the flash went off….

Q: And as far as your description of a pistol or revolver, approximately how big of a gun are we talking?

A: Very small. Like a hand size.

Q: So, for the record, maybe six inches or so?

A: Yea, literally like pocket size.

*Id.* at 63-64; *see also id.* at 65 (Jennett describing the firearm as "chrome or silver").

The trial court further explained:

Before allowing [Officer] Domico to testify, [the court] held a sidebar conference during which the Commonwealth provided an offer of proof. At the conclusion of the sidebar conference, [the court] stated: "There's been testimony in the trial that there was

- 13 -

a handgun used, that it was silver. And if this witness is going to testify that [Appellant] was found with a gun and it was silver, the jury can certainly link those two up when he was being arrested on an arrest warrant for this case." *Id.* at 180. [Officer] Domico described the events leading up to [Appellant's] arrest on October 7, 2021[,] including the fact that just prior to the arrest, [Appellant] was seen carrying a black satchel. [Officer] Domico then testified as follows:

> [ADA]: And as far as that bag that [Appellant] had on his person as he's exiting the vehicle –
>
> [Officer Domico]: That's correct.
>
> Q: -- that was recovered as well with [Appellant's] arrest?
>
> A: It was. [Appellant] was running through the garage area. So we went into the garage. There was a little office in the back, and you can run through the door and it opened up. As the agents came in with rifles and were securing the location, [Appellant] ran across the back and tossed the bag up on to the roof of the inner office garage, and there [*sic*] had car parts and other stuff up there, tires and other stuff on top of that garage. The agent went up and did retrieve the black bag, and inside the black bag was two guns.

*Id.* at 186-[]87. [Attorney Moyer] objected to [Officer] Domico's testimony that there were two guns in the bag[,] arguing that there was only evidence of [Appellant] having one gun on the day of the incident. While [the court] overruled the objection, [it] cautioned the Commonwealth that [Officer] Domico was only to discuss one gun. [Officer] Domico then properly authenticated Exhibit C-12, a photograph of a handgun, describing it as "a black handgun with a gray top" and "It's one of the guns that [was] in the bag." *Id.* at 188. [The trial court] then admitted Exhibit C-12 into evidence over [Appellant's] objection….

Trial Court Opinion, 3/27/24, at 8-9 (some citations omitted).

The trial court concluded the Commonwealth laid an appropriate foundation upon which the jury could infer that the Cobra handgun recovered during Appellant's arrest was the same one Appellant used to shoot at

- 14 -

Jennett's vehicle. We discern no abuse of the trial court's discretion in this regard. *See Holt*, 273 A.3d at 535-39 (witness's testimony that he observed the appellant with a .40 caliber firearm just weeks before the shooting at issue—which resulted in the death of a police officer—was admissible under the similar weapon exception to demonstrate the appellant's familiarity with and access to a .40 caliber firearm); *see also Commonwealth v. Payton*, 285 A.3d 952 (Pa. Super. 2022) (unpublished memorandum at 13-14) (concluding evidence that an unregistered .38 caliber revolver found in the appellant's car two weeks after a shooting was admissible under the similar weapons exception, where the victim testified he "knew" the appellant shot at him with what looked like a Glock 40 semiautomatic pistol; an expert testified the bullet recovered from the victim's room could have been fired by either a .38 revolver or a 9-millimeter semiautomatic pistol; and a .38 revolver would not have ejected a fired cartridge casing).[10] Further, as the Commonwealth correctly points out, "[a]ny uncertainty that the weapon is the actual weapon

---

[10] *See* Pa.R.A.P. 126(b) (providing that we may consider, for persuasive value, unpublished memoranda filed after May 1, 2019).

- 15 -

used in the crime goes to the weight of the evidence." ***Christine***, 125 A.3d at 400. Thus, Appellant's argument lacks merit.[11, 12]

In his second issue, Appellant contends the trial court erred in denying his request for a continuance after receiving the Philadelphia reports. Appellant's Brief at 29. Appellant refers to Officer Domico's testimony that the Cobra handgun depicted in Exhibit C-12 was recovered from the satchel Appellant was carrying on the date of his arrest. ***Id.*** at 31. However, Appellant argues, the Philadelphia Police Department's case report indicates the Cobra handgun was recovered from a shelf near the garage entrance. ***Id.*** at 30. Appellant argues he moved for a continuance "when the necessity for it became apparent to counsel." ***Id.*** at 33. Appellant claims he was prejudiced by his inability to subpoena Philadelphia police officers, who could undermine Officer Domico's credibility and establish that the Cobra handgun was inoperable. ***Id.***

---

[11] In a separate argument, Appellant contends the firearm evidence constituted improper character evidence under Pa.R.E. 404(b). Appellant's Brief at 22-23. Appellant's fleeting argument on this claim relies on his argument concerning the similar weapon exception. Therefore, Appellant failed to adequately develop this claim as a separate issue for review. Nevertheless, we note that our conclusion that the firearms evidence was properly admitted under the similar weapon exception establishes the evidence was admitted for a particular, permitted purpose, rather than to establish Appellant's character.

[12] Finally, Appellant argues the admission of the firearms evidence was not harmless error. Appellant's Brief at 28-29. However, as we have found no trial court error, we need not conduct a separate harmless error analysis.

Additionally, Appellant asserts the trial court improperly assumed Appellant already possessed the information contained in the Philadelphia reports. *Id.* at 34. Appellant directs our attention to his previous argument that the Commonwealth failed to provide notice of its intention to admit testimony and evidence concerning the Cobra handgun. *Id.*; *see also id.* at 35-36.

The Commonwealth counters "Appellant grossly overstates the essentiality and necessity of these witnesses and the gravity of the impeachment evidence they would have provided." Commonwealth Brief at 21. In particular, the Commonwealth argues:

> [T]he impeachment value of any witness to impeach Officer Domico's testimony would have been wholly inconsequential because the firearm depicted in C-12 would have been nearly identical to the other firearm located in Appellant's satchel. The Philadelphia Police Department report describes both firearms as "Silver/Black … semi-auto … 9mm" handguns, distinguished only by the fact that one is manufactured by Cobra Enterprises and the other by Glock. Other than the difference in manufacturer, these two guns would have been basically identical in appearance.

*Id.* at 22. Further, the Commonwealth points out that testimony concerning the Firearms Identification Unit lab report could not establish when the Cobra handgun became inoperable. *Id.* at 24.

In considering Appellant's claim, we are mindful of our standard of review:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion.

- 17 -

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa. Super. 2016) (citation omitted). "We will not reverse a trial court's decision absent a showing of … prejudice to the defendant." *Commonwealth v. Tucker*, 143 A.3d 955, 966 (Pa. Super. 2016) (citation omitted).

> Pennsylvania Rule of Criminal Procedure 106 provides, in relevant part:
>
> (A) The court or issuing authority may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party.
>
> * * *
>
> (D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(A), (D). "We must examine the reasons presented to the trial court for requesting the continuance, as well as the trial court's reasons for denying the request." *Norton*, 144 A.3d at 143.

> When a party requests a continuance to secure a material witness, the court considers the following factors:
>
> (1) the necessity of the witness to strengthen the party's case; (2) the essentiality of the witness to the party's case; (3) the diligence exercised to procure the witness' presence at trial; (4) the facts to which the witness could testify; and (5) the likelihood that the witness could be produced at the next term of court.

*Id.* at 143-44 (citation and brackets omitted).

Here, Appellant requested a continuance in order to subpoena witnesses who could offer testimony concerning the Philadelphia reports. *See* N.T., 6/7/23, at 8, 19. The trial court denied Appellant's motion for continuance, stating:

It's obvious to me that [Appellant] was in possession of this information at the time he pled guilty in Philadelphia. His private counsel in Philadelphia County clearly had possession of this information.

Whether [Appellant] chose to keep it from [defense counsel] until last night, that was up to him, but certainly you had an opportunity to speak with [Appellant] numerous times before last night and had an opportunity to subpoena any witnesses that you needed at that time.

We're in the middle of a trial now. We are not going to continue this trial so that you can go do something that [Appellant] had knowledge of and had the ability to do a long time ago.

*Id.* at 19-20.

In its opinion, the trial court further explained:

There is no dispute that the Commonwealth passed the photograph of the handgun (Exhibit C-12) during discovery and that [Appellant] was in possession of that photograph prior to trial. The "evidence" being referred to by counsel was never presented to the jury, and never presented to the [trial c]ourt until after the [c]ourt ruled on the motion for mistrial. However, that "evidence" was in [Appellant's] possession, and in the possession of his private [Philadelphia] attorney long before this trial. Based on those facts, the fact that the trial was at or near its conclusion, the fact that … a jury [was] waiting to hear the closing arguments, and [the trial court's] conclusion that there would be no prejudice to [Appellant], [the court] determined it was in the interest of justice to deny the motion for continuance.

Trial Court Opinion, 3/27/24, at 16.

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's motion for continuance. Further, Appellant failed to establish he was prejudiced by the inability to call additional witnesses. The impeachment value of the Philadelphia reports and proposed additional witnesses would be minimal, at best. As set forth in connection with Appellant's first issue, the Commonwealth was not required to establish the Cobra handgun shown to the jury as Exhibit C-12 was the same handgun Appellant used to shoot at Jennett. From the similarities between the gun described by Jennett and the gun found, the jury was permitted to infer the use of the Cobra handgun. Accordingly, Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2024