J-S72014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRADLEY DANE HACKENBERGER | : | |
| | : | |
| Appellant | : | No. 120 MDA 2018 |

Appeal from the Judgment of Sentence July 18, 2017
In the Court of Common Pleas of Juniata County Criminal Division at
No(s):  CP-34-CR-0000129-2015

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 16, 2019**

Bradley Dane Hackenberger appeals from the judgment of sentence of thirty to sixty years of imprisonment following his convictions for various sex crimes.  He challenges, *inter alia,* the trial court's finding that he was a sexually violent predator ("SVP") immediately prior to the sentencing hearing.  Upon review, we vacate Appellant's SVP designation and affirm his judgment of sentence in all other respects.

Appellant was accused of crimes in connection with the sexual abuse of L.B., the granddaughter of Appellant's girlfriend.  On June 25, 2015, sixteen year old L.B. came into the Lewistown, Pennsylvania state police station and reported that Appellant sexually abused her repeatedly, between the ages of 12 and 15, in exchange for money and gifts.  N.T. Trial, 8/5/16, at 36-49, 55, 57, 139-140.  She related that Appellant had given her as much as $500.00 in exchange for sexual acts including the touching of her bare breasts, digital

penetration of her vagina, oral sex, and both vaginal and anal intercourse. *Id*. at 48, 140; Commonwealth Exhibit 2. She reported that the abuse occurred in multiple locations throughout Juniata County, starting when she was twelve years old. *Id*. at 43, 46-47. The abuse continued until approximately nine months before she came into the station; however, Appellant continued to send L.B. sexually explicit text messages requesting sexual favors. *Id*. at 55-57.

While at the police station, L.B. showed her interviewer, Trooper Blaine Henderson, a text that she had received from Appellant the previous night. *Id*. at 57-58, 140. The message was a picture of a woman in lingerie, with the caption "dominatrix." *Id*. at 65, 140. Trooper Henderson encouraged L.B. to reply to the message. *Id*. at 141-42. L.B. sent a reply and began a conversation with Appellant, wherein he requested a manual genital stimulation and to perform oral sex on L.B. *Id*. at 67-75. They arranged to meet at L.B.'s house. *Id*. at 142-44. When Appellant arrived, he was taken into custody. *Id*. at 145. A search of his vehicle revealed two containers of personal lubricant in the driver-side door. *Id*. at 148. A search of his cellphone confirmed that he had sent the aforementioned incriminating messages. *Id*. at 147-49.

Appellant was charged with four counts each of rape by forcible compulsion, statutory sexual assault, involuntary deviate sexual intercourse ("IDSI") with a person less than sixteen years of age, aggravated indecent assault of a person less than sixteen years of age, and indecent assault of a

person less than sixteen years of age, and one count each of rape of a child, IDSI with a child, aggravated indecent assault of a child, aggravated indecent assault of a person less than thirteen years of age, and indecent assault of a person less than thirteen years of age.

Appellant waived his preliminary hearing and, on August 5, 2016, proceeded to a jury trial. Immediately before the start of trial, defense counsel objected, on the grounds of relevance and prejudice, to any mention of the lubricants and the admission of the text messages. N.T. Trial, 8/5/16, at 4-8. However, the trial court overruled Appellant's objections. *Id*. at 8. Defense counsel later reasserted contemporaneous objections to the admission of the text messages. *Id*. at 61, 174. Again, those objections were overruled and both exhibits were admitted during trial. *Id*. at 174. After Appellant presented multiple character witnesses, he was convicted of all twenty-five sexual offenses.

At the conclusion of an SVP hearing, held on July 18, 2017, the court found Appellant to be an SVP pursuant to 42 Pa.C.S. § 9799.24(3)(3) of the Sexual Offender Registration and Notification Act ("SORNA"). Appellant immediately proceeded to sentencing, wherein he received an aggregate sentence of thirty to sixty years of imprisonment. More specifically, he received consecutive terms of imprisonment of: five to ten years of imprisonment for rape by forcible compulsion; ten to twenty years of imprisonment for rape of a child; five to ten years of imprisonment for IDSI with a person less than sixteen; and fifteen to thirty years of imprisonment

for IDSI with a child. However, the sentence for IDSI with a child was run concurrently to the other IDSI conviction, but consecutively to any other sentence under this order. Sentences were imposed at the rest of the convictions, but they were imposed concurrently to the sentences discussed above.

Appellant filed a timely post-sentence motion challenging his sentence, the sufficiency of the evidence on all convictions, his SVP designation, and the admission of the text messages as irrelevant and improper character evidence. He also assailed Trooper Henderson's testimony concerning the lubricants seized from Appellant's vehicle as irrelevant and prejudicial. The post-sentence motions were denied by operation of law. Appellant then filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, in which he raised the same issues that he pursued in his post-sentence motion.

Appellant presents the following issues for our review:

1. Did the trial court commit reversible error in admitting into evidence at the trial of the [Appellant], over the objections of [Appellant], *Commonwealth's Exhibit "1"*, *Commonwealth's Exhibit "3"* and statements regarding the content of those exhibits by the victim and Trooper Blaine R. Henderson?

2. Did the trial court commit reversible error in failing to grant [Appellant's] post-sentencing motion challenging the sufficiency of the evidence presented at trial to support the [j]ury's verdict?

3. Is the aggregate sentence [Appellant] received of [thirty] to [sixty] years confinement, which effectively gives

[Appellant] a sentence he cannot complete in his [lifetime] and for all practical purposes should be considered a life sentence based on [Appellant's] age at the time of his sentencing, clearly erroneous and/or a manifest abuse of discretion in light of the conduct at issue in the case before this Court?

4.    Did the trial court commit reversible error in finding that Appellant is a [SVP] pursuant to 42 Pa.C.S. § 9799.24(e)?

Appellant's brief at 7-8 (unnecessary capitalization omitted).

In his first claim, Appellant challenges the admission of evidence.  This Court has stated:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.  Thus, [this Court's] standard of review is very narrow.  To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super. 2012) (citation and internal quotation marks omitted).

Appellant specifically alleges that the admission of two Commonwealth exhibits, consisting of text messages between L.B. and Appellant from June 24 to June 25, 2015, should have been excluded as irrelevant and prejudicial. Appellant's brief at 19-25.  He maintains that the messages were irrelevant as they were exchanged after the charged behavior, but prejudicial because of the emphasis placed on them at trial.  Appellant contends, "the tendency

- 5 -

of the jury is to accept [the text messages] . . . as paramount to an actual confession."[1] *Id*. at 21-22, 24.

The Commonwealth responds that the text messages were highly relevant, since they corroborated the report that the victim had just given police, referenced past encounters, and were in furtherance of Appellant's continuing course of conduct of preying on the victim. Commonwealth's brief at 5, 10. The trial court agreed, reasoning that the messages were "intertwined with the past and thus were relevant and more probative than prejudicial." Trial Court Opinion, 3/21/18, at 4.

It is well-settled that "[r]elevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015); *see also* Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also*

_____

[1] Appellant also challenges the Commonwealth's failure to provide "reasonable notice" of their intention to use the text messages at trial. *See* Pa.R.E. 404(b)(3). While no formal notice was filed, it is apparent from the record that Appellant's counsel was aware that the Commonwealth planned to admit the messages, since he challenged their admission before trial. N.T. Trial, 8/5/16, at 4-8. Therefore, Appellant was not 'unfairly surprised' when the messages were admitted, and this argument fails. *Commonwealth v. Lynch*, 57 A.3d 120, 125-26 (Pa.Super. 2012) (noting that there is no requirement that the "notice" must be formally given or be in writing in order for the evidence to be admissible). Additionally, whatever the potential merit of Appellant's alleged claim of error, it is waived due to his failure to properly preserve it at trial. Pa.R.A.P. 302(a); *Commonwealth v. Sanchez*, 82 A.3d 943, 972 (Pa. 2013).

***Tyson***, ***supra*** at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

We begin our review of Appellant's claim by examining the evidence that was offered. The text message exchange occurred, in verbatim, as follows:

Appellant:    [image of female in lingerie, captioned "dominatrix" with smiley face emoji with the tongue sticking out].

L.B.:    Why did you send me this

L.B.    It would be cool if you bought that for me if bet you'd like to see me in it maybe we could go do something [winkey face emoji] if you'd give me Alittle money.

Appellant:    I will get you a lot of money…..I care deeply about you and all of our people. I miss being close to you…..please send me your size and I will get it for us…..you know I am going to help you with your car too…..I would love to see you in something like that. Thank you. i always care deeply about and for you…..you know this in your heart too…..the farm is going to be yours too…..my dear…..I care about your future. [kissing emoji]

L.B.:    I have no clue what size I am what do you think

Appellant:    Well…..I will just make my best guess….[smiley face emoji] Thank you for caring. I want you to have it all (as I have always promised you) and you know i am

- 7 -

seriously your number one fan – and i always will be. i simply would like to see you happy and successful in anything in your life that you do. your friend who would lovingly, nicely do anything for you. [smiley face emoji]…..I have gma house all to my self…..would you like to meet today sometime? Gma is not coming back till 4:00 or 5:00. We can work on a plan [excited smiley face emoji]

L.B.:          Sure what's your plan for me..

Appellant:    Well I want you to directly have the cash this time…..you know I meant well giving it to your mother, yet I want this portion to directly go to you this pay out time. [winkey face emoji] Should I pick you up? What is your mom doing?

L.B.:          When can you get that lingieray for me how soon?

L.B.:          What time could you pick me up? I'm on my way back from dollar general

Appellant:    1:00 is that o.k. [smiley face emoji]

L.B.           How bout closer to 1:30 what do you want to do??

Appellant:    1:30 is awesome….we can go back to gma house and I'll fill you in on the plans for the next weeks and months….and it can be a play time….I hope…..please, please please. [winkey face emoji]

L.B.           What do you mean by play time lol [winkey face emoji]

L.B.           We're running a little late so take your time

Appellant:    Would you give me an h.j…….I sure think I have earned one: all that money and driving at fair time, a very merry Christmas and all i've lovingly done this spring (to include helping with the basset hound project) [excited smiley face emoji] Would you please give me an h.j. and talk kinky to me…..please.please.please. You know I will beg for a treat. [winkey face emoji with tongue out]

L.B.: That's it? [winkey face emoji]

Appellant: Well….can I please get more than that…..I respectfully and lovingly ask???? [kissing face emoji]

L.B.: I'll think about it sorry we're running late how bout 1:45

Appellant: Thank you. [tulip emoji]….See you at 1:45 [excited smiley face emoji]

L.B.: I'm still thinking any other requests

Appellant: …..well…..I would like to eat you…yum. [winkey face emoji]

Commonwealth Exhibit 1.

At trial, L.B. testified to a pattern of sexual assault, whereby Appellant would offer her gifts and money in exchange for sexual favors. N.T. Trial, 8/5/16, 37-48. She interpreted the language in the text messages, based on past encounters with Appellant, that meeting up for "playtime" meant that Appellant wished to exchange sexual favors for gifts and money; that "h.j." meant "hand job," where L.B. would manually stimulate Appellant; and that "eat[ing]" her meant that Appellant wanted to perform oral sex on her. *Id*. at 70-71. Additionally, Appellant made references to past favors or "gifts" that he had done for L.B. *Id*.

When considered as a whole, the text messages reference past sexual encounters and utilize a short-hand that indicates a familiarity between Appellant and L.B. on these topics. Further, they are highly probative pieces of evidence, since they corroborate key details in L.B.'s account of events,

such as her testimony that Appellant would offer her money in exchange for sexual favors. The fact that the relevant evidence was prejudicial to Appellant did not render it inadmissible. "[E]ven inflammatory evidence may be admissible if it is relevant and helpful to a jury's understanding of the facts and the probative value outweighs the prejudicial effect." *Commonwealth v. Serge*, 896 A.2d 1170, 1182 (Pa. 2006). We conclude that the probative value of this proof was not outweighed by its prejudicial impact, and that the trial court did not abuse its discretion in admitting the text message evidence.[2]

Appellant claims that the trial court further erred by permitting Trooper Henderson to testify, over a pretrial objection, that he photographed two containers of personal lubricating jelly found inside Appellant's vehicle.[3] Appellant's brief at 25. The Commonwealth responds that the lubricants were

---

[2] To the extent that Appellant argues that the only purpose of these messages was to improperly prove propensity, we disagree. Appellant's brief at 28. As the trial court found, the messages "were intertwined with the past," such that they were not utilized as improper character evidence. Trial Court Opinion, 3/21/18, at 4; *Cf Commonwealth v. Ross*, 57 A.3d 85 (Pa.Super. 2012) (holding that evidence of abuse of other women inadmissible propensity evidence in murder trial).

[3] In his brief, Appellant incorrectly challenges Commonwealth exhibit three, which he says contained photographs of the personal lubricants that were seized from Appellant's vehicle. A review of the record reveals that exhibit three actually consisted of a sixteen-page document that included text messages between the victim and Appellant from Appellant's cellular phone. N.T. Trial, 8/5/16, at 149-152; Commonwealth Exhibit 3. However, Trooper Henderson testified that he seized lubricants from Appellant's vehicle, so we presume that Appellant intends to challenge the admission of that testimony. N.T. Trial, 8/5/16, at 148.

relevant, since they were consistent with Appellant's expectations of a "hand job." Commonwealth's brief at 12. Also, they were not prejudicial as they were only briefly mentioned during Trooper Henderson's testimony. *Id*. at 11-12. The trial court agreed. Trial Court Opinion, 3/21/18, at 4.

The testimony of Trooper Henderson proceeded as follows:

Q.     . . . Did you find anything of significance in the vehicle?

A.     In the vehicle, I found – there were two bottles of, like, personal or sexual lubricant that were in the driver-side door (indicating). They were not seized. Just photograph documented. Otherwise, there was nothing else – oh, there was another cellular telephone.

N.T. Trial, 8/5/16, at 148.

Appellant was on trial for the systematic sexual abuse of L.B. He was arrested while waiting for L.B., in the prearranged meeting place at the scheduled time, expecting to receive a "hand job." Therefore, the trial court found that Trooper Henderson's brief mention of Appellant's possession of two containers of personal lubricating jelly was consistent with Appellant's stated intentions. *Id*. at 408. Further, this testimony corroborated the content of the text messages that Appellant exchanged with L.B. Trial Court Opinion, 3/21/18, at 5. We find nothing in the record to indicate that the court abused its discretion.

In his second claim, Appellant challenges the sufficiency of the evidence supporting his convictions.[4] Our standard of review when considering a challenge to the sufficiency of the evidence is:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant raises three distinct challenges to the sufficiency of the evidence supporting his convictions: (1) the evidence was insufficient to support the jury's finding that he committed the forcible compulsion element

---

[4] Appellant titles this section "sufficiency and weight of evidence to support all convictions." Appellant's brief at 29. However, the substance of his argument addresses only sufficiency. Therefore, we consider only his sufficiency argument here. ***See Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (explaining the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence).

of the four charges of rape by forcible compulsion; (2) the Commonwealth offered no proof that any sex acts occurred when L.B. was under the age of thirteen, as required to prove that he committed rape of a child, IDSI with a child, aggravated indecent assault of a child, aggravated indecent assault of a child less than thirteen, and indecent assault of a child less than thirteen; and (3) L.B.'s testimony was too vague to establish that Appellant raped and statutorily sexually assaulted her at least once for every year charged. Appellant's brief at 29-34.

We turn first to the sufficiency of the evidence as to the forcible compulsion element of Appellant's rape conviction under 18 Pa.C.S. § 3121(a)(1). That provision states, "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." *Id*. Forcible compulsion is "Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101.

A determination of forcible compulsion rests on the totality of the circumstances, which includes but is not limited to:

> The respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 720-21 (Pa.Super. 2015). It is not necessary to show that the victim physically resisted the assault in order

to prove forcible compulsion. *Id*. Moreover, a victim's uncorroborated testimony alone is sufficient to support a rape conviction. *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa.Super. 2008).

Appellant contends that the evidence used to convict him of rape was insufficient because L.B.'s testimony is devoid of any statement which describes his alleged use of force against her. Appellant's brief at 32. We disagree. An examination of the totality of the circumstances supports a finding that Appellant utilized psychological force against L.B.

In *Commonwealth v. Rhodes*, 510 A.3d at 1217, 1227 (Pa. 1986), a twenty year old man lured an eight year old neighbor, whom he had known for several years, into an abandoned building and proceeded to engage in sexual acts with her. In finding sufficient evidence of forcible compulsion, the *Rhodes* court reasoned:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id*.

In the instant case, there was a vast age difference between Appellant and L.B., as the latter was thirty-one years his junior. N.T. Trial, 8/5/16, at

147. She was only twelve years old when the abuse began. Appellant had been in an on-and-off again relationship with L.B.'s grandmother since L.B. was eight years old and was integrated into L.B.'s family, to the point that he was sharing meals with them multiple times per week. *Id*. at 35, 111, 113, 123, 125. When L.B. refused to perform sex acts on and with Appellant, telling him that she "did not want to do these things," he continued to pursue her, increasing the value of the gifts he offered until he bought her acquiescence. *Id*. at 42, 47-48. Although L.B. testified that Appellant never physically harmed her, she also explained that his behavior made her feel "frightened to say no," because he would "keep bugging her or get mad." *Id*. at 53.

We find that the significant age difference between Appellant and the victim, L.B.'s stated fear of Appellant, along with his status as a trusted friend of her family, provided Appellant with the opportunity and necessary authority needed to compel L.B. to submit to his will. As the trial court, acting as fact-finder, accepted the foregoing evidence as true, it was sufficient to support the court's finding that the Commonwealth met its burden of proving that Appellant forcibly raped L.B., repeatedly. *See Rhodes*, *supra*.

In his second sufficiency claim, Appellant argues that the Commonwealth did not prove that he engaged in any sexual activity with L.B. before she was thirteen, an element necessary to support his convictions for rape of a child, IDSI with a child, aggravated indecent assault of a child less

than thirteen, aggravated indecent assault of a child, and indecent assault of a child less than thirteen. Appellant's brief at 32.

All of the applicable statutes require proof that the victim was under thirteen.[5] L.B. testified that all of the abuse committed by Appellant started

_____

[5] Appellant was convicted of rape of a child under 18 Pa.C.S. § 3121(c) which states, "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than [thirteen] years of age." His conviction of IDSI with a child was pursuant to 18 Pa.C.S. § 3123(b), providing, "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." Aggravated indecent assault of a child less than thirteen is:

> A person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic, or law enforcement procedures commits aggravated indecent assault if. . . the complainant is less than [thirteen] years of age.

18 Pa.C.S. § 3125(a)(7). Aggravated indecent assault of a child is:

> A person commits aggravated indecent assault of a child when the person violates subsection (a)(1) [lack of consent], (2) [forcible compulsion], (3) [threat of forcible compulsion], (4) [unconscious], (5) [substantially impaired], or (6) [mental disability] and the complainant is less than [thirteen] years of age.

18 Pa.C.S. § 3125(b). Finally, Appellant was adjudicated guilty of committing indecent assault of a child less than thirteen years of age, which is defined as follows:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine, or feces for the purpose of arousing sexual desire in the person or

- 16 -

when she was twelve years old. N.T. Trial, 8/5/16, at 36-38, 50. Specifically, L.B. explained that she was twelve the first time that she gave Appellant a "hand job" in exchange for a Nintendo hand-held game; engaged in vaginal sex in order to receive a Wii game system; and performed and received oral sex from Appellant. *Id*. at 38-39, 54-55. Further, L.B. testified that during this period, Appellant would often "finger her" or she would give Appellant a "hand job," when they would be alone together picking up dinner for her family, and that these outings occurred at least twice a week. *Id*. at 43-46. Therefore, the Commonwealth's evidence was sufficient to establish that Appellant engaged in the charged sexual activity with L.B. before she turned thirteen years of age.

Finally, Appellant complains that L.B.'s testimony was too vague to prove that any of the charged offenses occurred "once or more," as charged. Appellant's brief at 30-31. Again, we disagree. Importantly, the Commonwealth does not always need to prove a specific date of an alleged crime. ***Commonwealth v. Brooks***, 7 A.3d 852, 858 (Pa.Super. 2010). The Commonwealth has broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct. ***Commonwealth v.***

---

the complainant and. . . the complainant is less than [thirteen] years of age.

18 Pa.C.S. § 3126(a)(7).

*G.D.M., Sr.*, 926 A.2d 984, 990 (Pa.Super. 2007). The degree of specificity required depends on "the nature of the crime and the age and condition of the victim, balanced against the rights of the accused." *Commonwealth v. Devlin*, 333 A.2d 888, 892 (Pa. 1975).

Instantly, we are confronted by a case involving ongoing, repeated abuse from approximately January 17, 2011, until August 31, 2014. L.B. identified specific incidents during the prolonged period of abuse, noting two such incidents when she was twelve, one when she was thirteen, and one when she was fifteen. N.T. Trial, 8/5/16, at 37-40, 47, 50. Additionally, L.B. revealed that there were many more instances of abuse that occurred during the relevant time frame, and she testified as to where they took place and the gifts she received in exchange. *Id*. at 41-52. Finally, she explained that she knew she was twelve when the abuse started because it coincided with the birth of her brother, it occurred on almost a weekly basis, and ended when she began dating her boyfriend at age fifteen. *Id*. at 36-55.

Viewing the evidence in the light most favorable to the Commonwealth, we find that L.B.'s testimony was legally sufficient to fix the dates of abuse. A child cannot be expected to remember each and every date upon which she was victimized, especially where the events are so numerous and occur over an extended period of time. *Commonwealth v. Niemetz*, 422 A.3d 1369, 1373 (Pa.Super. 1980) ("[W]e do not believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse [a] child with

impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood."). Thus, we reject Appellant's claim and conclude that his challenge to the sufficiency of the evidence that the sexual conduct occurred once or more is without merit.

In his next issue, Appellant alleges that the sentence imposed by the trial court was unduly harsh and excessive. Appellant argues that all of the offenses should have been viewed as stemming from a single criminal course of conduct which merged for sentencing purposes, due to the fact that he provided L.B. with gifts for various sexual favors over a course of time. Appellant's brief at 36. He argues that the imposition of consecutive sentences, does not comply with "the principles regarding a 'single criminal episode'" and results in an improper life sentence. **Id**.[6]

_____

[6] In support of his argument Appellant inaptly cites **Commonwealth v. McPhail**, 692 A.2d 139 (Pa. 1997), a decision providing that charges arising from a single criminal episode and occurring in multiple counties may be brought before any court of common pleas, since the courts of common pleas possess statewide jurisdiction. Appellant's convictions actually arise from a continuous course of conduct that included many individual incidents of abuse. Therefore, an analysis of the compulsory joinder statute is not relevant. Also, **McPhail**, the only case that Appellant provides to support his argument, has been superseded by statute. **See Commonwealth v. Fithian**, 961 A.2d 66 (Pa. 2008).

The issue of whether "convictions merge for sentencing is a question implicating the legality of Appellant's sentence.[7] Consequently, our review is *de novo* and the scope of our review is plenary." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009). The statute governing the merger of sentences provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765; ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

Here, Appellant's crimes did not arise from one criminal act. The criminal information charged Appellant with a litany of sexual offenses that occurred between January 17, 2011 and August 31, 2014. Although the dates are not specified for the individual charges in the information, both parties agreed and the jury was told that, where there were multiple charges for the same offense, *i.e.* four counts of rape by forcible compulsion, each charge represented a different year that the abuse occurred. N.T. Trial, 8/5/16, at 246; N.T. Sentencing, 7/18/17, at 58, 62. However, this did not mean that

---

[7] Although, Appellant has framed this issue as a purely discretionary sentencing issue in his statement of questions and his concise statement, the substance of his argument also raises legality concerns. Concise Statement, 2/6/18, at 2; Appellant's brief at 7-8. Due to this discrepancy we address both issues separately, utilizing the appropriate standards of review for each.

the behavior occurred only in one isolated incident each year. L.B. testified that various sex acts occurred on almost a weekly basis during the charged time period. N.T. Trial, 8/5/16, at 36-55. Therefore, the record evidence supports the conclusion that the crimes did not arise from a single act.

Ultimately, the jury found Appellant guilty of twenty-five offenses that stemmed from his systematic sexual abuse of a minor. Each charge either had a different offense date or contained different elements that the Commonwealth was required to prove beyond a reasonable doubt. Therefore, merger would have been inappropriate. Appellant received standard range sentences. Despite the sentencing court's discretion to run all of his sentences consecutively, which would have resulted in an aggregate sentence of ninety-three years and nine months to one-hundred and eighty-nine years of imprisonment, he received an aggregate sentence one-third that long. Appellant is simply unhappy that the sentencing court did not run all of his sentences concurrently, in effect giving him a volume discount to which he is not entitled. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa.Super. 1995) (explaining that a defendant is not entitled to a "volume discount" for his or her crimes).

Appellant also directs our attention to mitigation evidence offered at sentencing that the trial court allegedly failed to consider while simultaneously weighing it inappropriately. This is a challenge to the discretionary aspects of

his sentence, and the following principles apply to our consideration of whether review of the merits of his claim is warranted.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant presented a discretionary sentencing claim in a post-sentence motion and in his concise statement. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). In his statement, Appellant claims that a substantial question is presented by the fact that the trial court imposed a sentence that was "essentially a life sentence which is not contemplated by the guidelines [and is not] justified and [or] supported by the record." Appellant's brief at 17-18. We find that this claim raises a substantial question since he challenges the aggregate sentence as unduly harsh, considering the length of imprisonment. ***See Commonwealth v. Lamonda***, 52 A.3d 365,

372 (Pa.Super. 2012). Accordingly, we now turn our attention to the merits of Appellant's challenge to his sentence.

Specifically, Appellant alleges that the sentencing court ignored the mitigating evidence that he offered at sentencing. This included the testimony of Steven Erickson, Ph.D, who stated that Appellant posed a low risk for recidivism based on his age and lack of a prior record and that Appellant suffered from mental illness; the fact that he never used physical force upon the victim; and the fact that he suffers from a traumatic head injury received from an improvised explosive device. Appellant's brief at 36-37. However, later in his brief, Appellant argues that the sentencing court incorrectly weighed this same evidence, when it considered that Appellant's mental illness actually supported issuance of a higher sentence. *Id*. at 38.

Appellant cannot have it both ways. A challenge to the weight that the court accorded Dr. Erickson's testimony necessarily concedes that the court did, in fact, consider it. Moreover, the sentencing court reviewed the pre-sentence report and sentencing guidelines. N.T. Sentencing, 7/18/17, at 99-101; *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa.Super. 2013) (finding that where the sentencing court has reviewed a pre-sentence report, it is presumed that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors). The sentencing court also had the benefit of expert testimony about Appellant's mental health, as presented by Appellant and the

Commonwealth at the SVP hearing, which immediately preceded sentencing. N.T. Sentencing, 7/18/17, at 7-43. The court considered and discussed Appellant's extensive military service and the permanent brain injury that he suffered from as a result of the explosion. *Id*. at 68. It also reviewed the testimony of the victim at trial, as well as the testimony of her mother at both trial and sentencing. *Id*. at 98; N.T. Trial, 8/5/16, at 32-108, 121-35, 223-24. The court identified the competing interests and articulated its reasoning. N.T. Sentencing, 7/18/17, at 99-101. We find nothing in the record to indicate that the court abused its discretion in imposing sentence. This claim fails.

In his fourth claim, Appellant alleges that his SVP designation should be vacated. Appellant's brief at 40-42. The trial court agrees and asks us to either vacate Appellant's SVP designation or remand the case so that it can do so. Trial Court Opinion, 3/21/18, at 4. By order dated July 18, 2017, the trial court found Appellant to be an SVP by clear and convincing evidence pursuant to SORNA. On October 31, 2017, this Court held "that section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." *Commonwealth v. Butler*, 173 A.3d 1212, 1218 (Pa.Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018).

In light of *Butler*, we find that Appellant's SVP designation cannot stand and vacate the order designating Appellant as an SVP. However, we need not

remand for the issuance of new notice of his registration requirements, "[s]ince Appellant was convicted of a Tier III offense" and "is still required to register for life." ***Commonwealth v. Tighe***, 184 A.3d 560, 583 (Pa.Super. 2018), *appeal granted*, 195 A.3d 850 (Pa. 2018) (on unrelated issues).

SVP designation vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019