J-S74020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK ROLLINS | : | |
| | : | |
| Appellant | : | No. 2111 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 12, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006547-2017

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.**:**                    **Filed: February 7, 2020**

Derrick Rollins (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of attempted murder and aggravated assault, and one count of first-degree murder.[1]  We affirm.

As Appellant's issues in this appeal challenge only evidentiary rulings by the trial court, we will not thoroughly recite the facts underlying Appellant's convictions.[2]  In short, on July 29, 2017, Appellant shot and killed John Le outside of his apartment building in Philadelphia.  Several witnesses observed

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2502(a).

[2] The trial court exhaustively recited the facts and procedural history in its opinion.  Trial Court Opinion, 8/28/19, at 1-23.

Appellant fleeing the scene. Shortly after, Appellant was caught peering into the windows of a nearby residence, whereupon the homeowner and a neighbor confronted Appellant. Appellant became agitated, retrieved a handgun from his car, and fired several rounds at the men, narrowly missing them.

The police attempted to locate and apprehend Appellant after several witnesses identified him as the shooter; however, he fled to Georgia. Approximately one month later, the police and U.S. Marshals apprehended Appellant in Georgia and extradited him to Pennsylvania. The Commonwealth charged Appellant with the above crimes.

The matter proceeded to a multi-day jury trial, commencing on March 11, 2019. During the Commonwealth's case, (1) several eyewitnesses to the shootings testified against Appellant; and (2) the trial court admitted into evidence various recorded telephone calls (the phone calls) that Appellant placed to three separate people while he was incarcerated for the instant crimes.[3]

Appellant did not testify. He admitted that he committed the crimes, but asserted the defense of voluntary intoxication, claiming that he had been under the influence of marijuana, alcohol and Xanax.[4] In Appellant's case-in-chief, defense counsel presented an expert witness in the field of toxicology,

---

[3] The jury was told that the phone calls were "intercepted"; they were not informed that Appellant had placed them from prison.

[4] There were no toxicology screens or tests performed on Appellant.

- 2 -

Lawrence J. Guzzardi, M.D. (Dr. Guzzardi). Dr. Guzzardi had previously interviewed Appellant and issued a report which the trial court admitted into evidence. Defense counsel asked the court to permit Dr. Guzzardi to testify to matters that he had learned from Appellant during the interview. The trial court ruled that Dr. Guzzardi could not testify to this extent, and explained its reasoning:

> Based upon argument from counsel for the Commonwealth and the current case law, this [c]ourt permitted Dr. Guzzardi to testify but [ordered] that Dr. Guzzardi would not be permitted to testify as to anything Appellant may have told him, but he could testify limited to his expertise in toxicology, [and] opine on hypotheticals based reasonably within the testimony. The [c]ourt explained[] that permitting Dr. Gu[]zzardi to testify as to things Appellant may have told him about th[e] day [of the crimes], without Appellant testifying, would be allowing the defense to back-door evidence to support their defense of voluntary intoxication without giving the Commonwealth the right to confrontation. N.T., 3/14/2019 p. 6.

Trial Court Opinion, 8/28/19, at 19-20 (brackets omitted). Dr. Guzzardi went on to testify as to, *inter alia*, (1) the respective effects of marijuana, alcohol and Xanax; (2) the fact that the effects of these substances upon any particular person vary, and are "dose dependent"; and (3) the extent to which these substances may impact memory and cause decreased inhibitions. Finally, Appellant's counsel requested that the trial court issue a jury instruction on diminished capacity, which the court granted.

At the close of trial, the jury found Appellant guilty of the above crimes. On April 12, 2019, the trial court sentenced Appellant to life in prison without the possibility of parole. Appellant timely filed post-sentence motions, which

the trial court denied. Appellant then filed this timely appeal. The trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant states his two issues as follows:

1. Trial counsel for [Appellant] filed a motion *in limine* to preclude intercepted telephone calls placed by [Appellant] to a third party while incarcerated at the George W. Hill Correction Facility. Did the learned trial court err when the court denied the motion and allowed the attorney for the Commonwealth to introduce as evidence to the jury the contents of the telephone calls made by [Appellant] to a third party?

2. Trial counsel filed a notice of the defense of mental infirmity wherein he provided notice to the Commonwealth that [Appellant] suffered a mental infirmity on July 29, 2019 and intended to call certain witnesses[,] including [Dr.] Guzzardi, [] in support of the defense. Counsel asked the court to permit Dr. Guzzardi to testify about facts he learned from [Appellant] during his interview with him. Did the learned trial court err when the court ordered that this expert witness may not testify to anything [Appellant] may have told him?

Appellant's Brief at 3 (citations to record omitted).[5]

Appellant first argues that the trial court erred in admitting the phone calls into evidence. *See id.* at 5-13. Appellant explains that in most of the phone calls, he is heard expressing anger against one of the witnesses, Kaiya Leonard (Leonard), who identified Appellant in connection with the crimes;

---

[5] We note that although the Commonwealth requested, and obtained, an extension of time in which to file its brief, it did not do so.

Appellant indicated that he wanted someone outside of the prison to cause harm to Leonard. *See id.* at 5-8, 10.

The trial court summarized the content of the phone calls, and the court's rulings on their admissibility:

The following calls were all recorded on September 6, 2017:

**Call number 3** was at 16:42 hours and is between [Appellant] and an unidentified person. [Appellant] is [heard] telling the other individual to beat up the bitch[, *i.e.*, Leonard,] because she signed a statement identifying him. [Appellant] goes on to state "Imma kill her." This statement is relevant, [and] is prejudicial to the defense, but the probative value far outweighs the prejudice. It is **admitted**.

**Call number 2** was at 16:53 hours and is between [Appellant] and a female, identified as his [former paramour,] … [Leonard]. This call pertains to [Leonard] having been shown a surveillance image wherein she identifie[d] [Appellant] and sign[ed] a statement to that effect. This statement is relevant, [and] is prejudicial to the defense, but the probative value far outweighs the prejudice. It is **admitted**.

**Call number 4** was at 17:01 hours and is between [Appellant] and [Leonard,] with [Appellant] claiming that she ratted on him. This statement is relevant, [and] is prejudicial to the defense, but the probative value far outweighs the prejudice. It is **admitted**.

**Call number 5** was at 17:13 hours and is between [Appellant] and [Leonard,] wherein [Appellant] is [heard] telling her that she should have lied and denied knowing who he was. This statement is relevant, [and] is prejudicial to the defense, but the probative value far outweighs the prejudice. It is **admitted**.

**Call number 6** was at 17:26 hours and is between [Appellant] and an unidentified male[,] wherein [Appellant] is [heard] instructing the male to "beat her the fuck up," because she identified him. This statement is relevant and

while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

**Call number 7** was at 17:37 hours and is a conversation between [Appellant] and an unidentified person[,] wherein [Appellant] is [heard] instructing the person, "if you see that girl you better fuck her up." This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

**Call number 1** was at 17:50 hours is a conversation between [Appellant] and an unidentified person (presumed to be [Leonard]) and [Appellant is heard] telling her that she is going to be beaten up for identifying him to the police. This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

The following calls were all recorded on September 8, 2017:

**Call number 8** was at 20:08 hours and is a conversation between [Appellant] and an unidentified person and [Appellant] is [heard] attempting to coerce the person to beat up [Leonard], but the person is reluctant because [Leonard] is a witness and if he does he will go to jail. [Appellant] further states that, "the only reason why I talk to her is to use her for what she is worth." This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

**Call number 9** was at 21:30 hours and is a call between the [Appellant] and [Leonard,] wherein she advises that the police executed a search warrant at her house and that they seized a pair of jeans and the keys to the car which she was supposed to hide. This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

**Call number 12** was at 22:05 hours is a call between [Appellant] and [Leonard] discussing what the police allegedly said at the time they were executing the search warrant. This discourse has no relevant value and is **inadmissible**.

The following calls were all recorded on September 10, 2017:

**Call number 11** was at 20:56 hours and is between [Appellant] an the unidentified male[,] wherein [Appellant] is [heard] scolding that person for failing to hurt [Leonard,] and again the male says he can't because she is a witness. This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

**Call number 10** was at 21:50 hours and is again between an unidentified person and [Appellant,] wherein the other person states that [Appellant] was on the run and that [Appellant] was in Georgia. This statement is relevant and while prejudicial, goes to [Appellant's] state of mind and the probative value outweighs the prejudice. It is **admitted**.

Trial Court Opinion, 8/28/19, at 26-28 (emphasis in original).

Appellant emphasizes that the police never charged him concerning his threats to cause harm to Leonard, and she never testified against him. Appellant's Brief at 12-13. According to Appellant, the phone calls, in which he frequently used foul language, improperly "presented [] Appellant as a person of bad character to the jury[,] and showed bad act evidence that is not connected to the crimes of murder and assault." *Id.* at 10. Appellant claims the phone calls were irrelevant and introduced merely to show Appellant's criminal propensity, which caused him undue prejudice and entitles him to a new trial. *See id.* at 10, 13. We disagree.

Preliminarily, we recognize:

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

- 7 -

*Commonwealth v. Cosby*, 2019 PA Super 354, at *47 (Pa. Super. 2019) (citation omitted).

Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Rule of Evidence 402 provides that "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Pa.R.E. 403.

Additionally, "[e]vidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, may be admissible for some other relevant purpose." *Commonwealth v. Williams*, 896 A.2d 523, 539 (Pa. 2006). Such evidence may be admitted to prove, *inter alia*, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" where the probative value of such evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).[6] "'Unfair prejudice' means a tendency to suggest a decision on an improper basis or to

_____

[6] Further, the Commonwealth must provide reasonable notice of the bad acts evidence it intends to introduce. Pa.R.E. 404(b)(3); *Commonwealth v. Lynch*, 57 A.3d 120, 125 (Pa. Super. 2012). However, "[t]here is no requirement that the 'notice' must be formally given or be in writing in order for the evidence to be admissible." *Id.* at 126.

divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007) (quoting Pa.R.E. 403, Comment).

Here, we agree with the trial court's determination that the phone calls (1) were relevant; (2) were properly admitted under Rule 404(b) to demonstrate Appellant's consciousness of guilt and state of mind, as well as the natural development of the case; and (3) any prejudicial impact from this evidence was outweighed by its probative value. The Pennsylvania Supreme Court has explained that "[t]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand, and form part of the history and natural development of the events and offenses for which the defendant is charged." **Commonwealth v. Hairston**, 84 A.3d 657, 666 (Pa. 2014) (citation and quotations omitted). Additionally, "[e]vidence of prior bad acts may [] be introduced to prove consciousness of guilt, *i.e.*, that the defendant was aware of his wrongdoing." **Commonwealth v. Ivy**, 146 A.3d 241, 251 (Pa. Super. 2016). Finally, it is well established that "[e]vidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and

place." ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa. Super. 2012) (citation and quotations omitted).[7]

Further, even if the trial court erred in admitting the phone calls, such error was harmless,[8] because the evidence of Appellant's guilt (including the various eyewitness testimony and Appellant's flight and admission of guilt) was so overwhelming that any prejudice caused by this evidence did not contribute to the jury's guilty verdicts. ***See Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007) (explaining that "[a]n error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."). Accordingly, the trial court did not err in admitting the phone calls into evidence, and Appellant's first issue lacks merit.

---

[7] In this appeal, the admission of the phone calls "completes the story" insofar as it explains why Leonard was unwilling to testify against Appellant.

[8] There is no indication in the record that defense counsel requested a jury instruction on Rule 404(b) evidence, and the trial court did not give one. However, this does not constitute reversible error or entitle Appellant to a new trial. ***See, e.g., Commonwealth v. Cousar***, 154 A.3d 287, 304 (Pa. 2017) (stating that "where evidence of a defendant's prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose[; h]owever[,] the decision not to seek such an instruction may be deemed reasonable in some circumstances because counsel may wish to downplay the evidence rather than highlight it to the jury." (internal citation omitted)); ***see also*** Pa.R.A.P. 302(a).

In his second issue, Appellant contends that the trial court erred in refusing to permit his toxicology expert, Dr. Guzzardi, to testify about all of the facts on which he relied, including matters that he learned from Appellant during an interview, in rendering his opinion as to the effects of Appellant's purported drug and alcohol consumption on the day of the shootings. ***See*** Appellant's Brief at 13-15. We disagree, and conclude that this issue is controlled by the Pennsylvania Supreme Court's decision in ***Commonwealth v. Towles***, 106 A.3d 591 (Pa. 2014); ***see also id.*** at 605 (stating that "[d]ecisions regarding the admission of expert testimony are left within the trial court's sound discretion, and this Court will not disturb such decisions absent a clear abuse of discretion.").

In ***Towles***, the appellant, who was convicted of shooting and killing an individual outside of a nightclub, claimed that he was intoxicated on marijuana and alcohol at the time of the crime, and asserted the defense of voluntary intoxication. ***Id.*** at 595-96. The appellant argued that the trial court had erred in excluding his toxicology expert's report from evidence and refusing to permit the expert to testify about all the facts on which he relied in rendering his report. ***Id.*** at 604-05; ***see also id.*** at 596 (explaining that "the report contained appellant's detailed account of his alcohol and drug consumption on the night of the murder. The expert was also prepared to testify about all the facts in his report, including appellant's statements."). The appellant declined to testify in his own defense. ***Id.*** at 605. Our Supreme

Court held that the trial court properly excluded the expert's report and testimony, stating:

> The trial court did not abuse its discretion in finding appellant's self-serving statements[, *i.e.*, appellant told the expert details about appellant's alleged intoxication and physiological state at the time of the murder,] were not of a type reasonably relied on by experts in toxicology. There is a distinction between an expert using basic facts provided by laymen to form an expert opinion, versus one who simply parrots out-of-court statements in court, thereby acting as a conduit for hearsay. In this case, there were no toxicology screens or tests performed on appellant. The expert's report was simply appellant's firsthand narrative of the events on the night of the murder and a detailed account of his drug and alcohol consumption that night. Had the expert been permitted to testify to the facts contained in his report, he would have been merely relaying testimony appellant would have given had he taken the stand. Pennsylvania's Rules of Evidence do not provide a mechanism for a criminal defendant to decline to testify and to avoid the rules of evidence by using an expert witness to introduce his story into the record. Accordingly, it was proper for the trial court to exclude the report from the jury's consideration and to prevent appellant's statements from reaching the jury via the expert's testimony.
>
> Moreover, appellant has failed to demonstrate he suffered prejudice from the trial court's decision, as his expert was permitted to testify by answering hypotheticals. These hypotheticals were comprehensive of appellant's account in the report regarding his drug and alcohol consumption that night[.]

*Id.* at 606.

Here, as in *Towles*, Appellant cannot use his expert's testimony to relay Appellant's account of his alleged intoxication and mental state into the record through the "back door," when Appellant elected not to testify. *See id.* Accordingly, it was proper for the trial court to prevent Appellant's statements from reaching the jury via Dr. Guzzardi's testimony.

Moreover, Appellant's attempts to distinguish *Towles* are unavailing. *See* Appellant's Brief at 15 (averring that, unlike the situation in *Towles*, Appellant's "trial counsel never posed a hypothetical question to [Dr. Guzzardi] and he never rendered an opinion based on hypothetical facts."). In actuality, Dr. Guzzardi *did* testify as to hypotheticals, as well as to statements made by two defense witnesses who testified to Appellant's drug and alcohol use on the date of the crimes. *See*, *e.g.*, N.T., 3/14/19, at 54-56 (Dr. Guzzardi answering hypothetical questions about alcohol consumption and memory loss), *id.* at 57-58 (Dr. Guzzardi answering hypothetical questions about marijuana and its potential to distort one's perception of reality and decrease inhibitions), *id.* at 59 (Dr. Guzzardi replying in the affirmative that his opinions pertained to "hypothetical" situations).

We further note that the Commonwealth presented a rebuttal witness, John O'Brien, M.D. (Dr. O'Brien), who was an expert in forensic psychiatry. Dr. O'Brien opined that upon reviewing all of the evidence, there were several instances that showed Appellant acted intentionally on the day of the crimes. *See id.* at 76-82. Dr. O'Brien further stated that he had listened to Dr. Guzzardi's testimony, and nothing in that testimony changed Dr. O'Brien's opinion that Appellant was acting intentionally, notwithstanding the possible effects of any drugs and alcohol that Appellant had consumed. *See id.* at 81-82; *see also id.* at 80, 81 (stating "there weren't any behaviors reported by any of the witnesses that would suggest significant intoxication[,]" and it was

unclear as to the amount of drugs/alcohol Appellant had consumed that day). It was within the sole province of the jury to weigh the testimony of the respective expert witnesses. *See Commonwealth v. Furness*, 153 A.3d 397, 401, 404 (Pa. Super. 2016) (explaining that assessments of credibility and conflicts in the evidence are for the fact-finder to resolve).

Finally, the trial court granted the defense request, based on Appellant's claimed intoxication, that the jury be read a diminished capacity cautionary instruction. Accordingly, the trial court did not err in limiting the testimony of Dr. Guzzardi,[9] and Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/20

---

[9] Again, even if the trial court erred in limiting Dr. Guzzardi's testimony, such error was harmless and did not unduly prejudice Appellant. *See Moore*, *supra*.

- 14 -